# SECURITY TRUST AND SAFETY VAULT COMPANY *v.* CITY OF LEXINGTON.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 55. Argued October 23, 24, 1906.—Decided December 3, 1906.

Before a special assessment, levied by legislative authority of a State—in this case providing for back taxes in Kentucky—can be actually enforced, or during the process of its enforcement, the taxpayer must have an opportunity to be heard as to its validity and extent; but this rule is met where the state court has afforded the taxpayer full opportunity to be heard on both of those questions, and after such opportunity has rendered a judgment providing for the enforcement of such amount of the tax as it finds actually due.

In so determining the amount due and reducing the amount assessed the state court does not assume the legislative function of making an assess- ment, but merely, after hearing, judicially decides the amount of an assessment, made by the assessor under color of legislative authority.

Whether under the constitution and laws of the State the burden of showing the invalidity of a tax is on the taxpayer, is not a Federal question.

THE plaintiff in error, which was plaintiff below, filed its

petition in the Fayette County Circuit Court, State of Kentucky, in equity, on February 3, 1899, for the purpose of obtaining an injunction restraining the defendants in error from the collection of certain back taxes accruing during the years 1894 to 1898, both inclusive, imposed in favor of the city of Lexington, and which the plaintiff asserted were illegally assessed. A temporary injunction was prayed for and granted, restraining the collection of the tax, and upon the trial the amount of the taxes was reduced, and, as so reduced, declared to be a lien on the property of the plaintiff in error as trustee, and judgment accordingly was entered, which judgment was, upon appeal to the Court of Appeals of the State, affirmed, and the plaintiff brings the case here by writ of error.

In the amended petition it is averred that the plaintiff, as trustee, owned certain real estate in the city of Lexington, and that the tax collector of the city, asserting a claim for back taxes from 1894 to 1898, both inclusive, in favor of the city against the trust estate in the plaintiff's hands for $13,964.96, had, to satisfy the claim, levied on the real property held by it as trustee and described in the petition, and had advertised the same to be sold, and would sell the same, unless restrained by order of the court. It was averred that the claim for back taxes was for alleged omissions of personal property owned by the plaintiff as trustee, which had not been assessed for city taxation for the years stated, and that the tax was based on alleged assessments imposed in December, 1898, for these years, made by the city assessor of Lexington. The plaintiff denied that the pretended assessments made in 1898 for those years were any assessments at all, and alleged that there had been no assessment for the back taxes of those years or for any of them. It was averred that certain entries which had been made in the assessor's books, for the years mentioned, purporting to assess the property for these back taxes, were interpolated among the assessments for those years, but were not legally made, that such entries were not assessments, nor any step in the valid assessment of back taxes in those years, and

were made by the city assessor without any notice to, or conference with, the plaintiff of his intention to make the same, or any assessment, and the plaintiff at no time, either before or since said pretended assessment, had been given or allowed any opportunity or privilege to make any complaint or show cause against the assessment before any compctent officer or tribunal whatever. It was also averred that. all of the property of plaintiff as trustee, during each of the years covered by the claim for back taxes, had been duly assessed, and if it had been given the opportunity plaintiff would have established the fact of such assessment and that it had been fully and legally paid.

The plaintiff averred that collection of taxes based on assessments made as above stated would be in violation of the Constitution of the United States and of the State of Kentucky, forbidding that a citizen should be deprived of his property without due process of law.

The defendants in their answer averred that all of the property (with an exception not material) on which the defendants were claiming taxes as upon omitted property, had in fact been omitted by the plaintiff from its assessment lists during the years mentioned, and that the lists made out by the plaintiff for those years had been imperfect and improper lists, and that there was omitted therefrom a large part of the personalty owned by the plaintiff as trustee. The defendants averred that all the omitted property was properly assessable for the respective years, and that there was due thereon, in 1898, as the back taxes on the said omitted property, the sum named, to wit, $13,964.96; and the defendants denied that the valuation of the property, as fixed in the assessment, was any larger in proportion than the value of the assessment generally placed on similar property in the city of Lexington. After the assessment was made, it was averred that the delinquent tax collector demanded payment of the same, which was refused, and thereupon he levied upon the property on December 31, 1898. The answer then set up the making of the assessment

on the property omitted, and showed that it was made sub-
stantially as averred in the amended petition, by inserting in
each of the books for the various years an additional assess-
ment on account of omitted property, and that after each of
the entries of assessment in the various books had been made
by the assessor he signed his name after the words, "Assessed
by me;" and it is averred that the assessment was also recorded
by the assessor in the back tax assessment book, kept by the
city of Lexington, and was by him reported to the auditor
of the city of Lexington on the day that the assessment was
made, December 31, 1898. The defendants also averred that,
more than thirty days prior to the time the assessment was
made, the city, through its duly authorized officers and agents,
had notified the plaintiff that it had omitted from its assess-
ments for the years 1894 to 1898, both inclusive, a large portion
of the estate held by it as trustee, and, at the time of giving
such notice, the officers of the city had furnished and delivered,
as a part of such notice, an itemized statement of the securities
and other personal property belonging to the estate, and held
by the plaintiff, on the respective dates, for taxation for the
respective years, and that payment of the taxes upon this
omitted property was repeatedly demanded of the plaintiff
by the city during a period of more than thirty days prior to
the assessment, and the plaintiff refused to pay any additional
taxes or to list the omitted property, and that ample time and
opportunity were afforded plaintiff to show that the property
had not been omitted from the yearly assessments, and the
plaintiff failed to do so.

A reply and rejoinder were filed, and upon the pleadings the
parties went to trial.

Judgment was given for the defendant, refusing the injunc-
tion, and providing for the sale of the real estate to satisfy the
amount due for back taxes, as stated in the judgment. The
total amount of back taxes due on the omitted property was,
by such judgment, reduced from $13,964.96, the amount
claimed by the defendant, to the sum of $8,626.63.

*Mr. John T. Shelby* and *Mr. George R. Hunt,* with whom *Mr. Joseph D. Hunt* and *Mr. John R. Allen* were on the brief, for plaintiff in error:

The right to be heard in tax cases is a constitutional right and indefeasible.

It is fundamental that in judicial or *quasi*-judicial proceedings affecting the rights of the citizen he shall have notice and an opportunity to be heard before any judgment, decree, order or demand shall be given and established against him. Tax proceedings are not in the strict sense judicial, but they are *quasi*-judicial, and as they have the effect of a judgment, the reasons which require notice of judicial proceedings are always present when the conclusive steps are to be taken. Cooley on Taxation, 2d ed., 362; 3d ed.; 626; *McMillan* v. *Anderson,* 95 U. S. 37; *Davidson* v. *New Orleans,* 96 U. S. 97; *Hager* v. *Reclamation District,* 111 U. S. 701; *Spencer* v. *Merchant,* 125 U. S. 345; *Palmer* v. *McMahon,* 133 U. S. 660; *Lent* v. *Tillson,* 140 U. S. 316; *Pittsburg, Cincinnati &c. Ry. Co.* v. *Backus,* 154 U. S. 421; *Winona & St. Peter Land Co.* v. *Minnesota,* 159 U. S. 537.

The action of the assessing officers, when completed according to the statutes, is a finality; at all events, so far as it relates to the value placed on the assessed property. In fixing these values, the assessors and the Boards of Review, if there be such boards, exercise a judicial or *quasi*-judicial function, and their conclusions are not open to review by any tribunal or court, unless otherwise expressly provided by statute. We must, therefore, look to the assessment proceedings to determine whether or not there was the due process of law required by the Constitution.

If the facts, or any material facts are there conclusively established against the property owner, without the required notice and opportunity to be heard, due process of law is wanting. *Stanley* v. *Supervisors,* 121 U. S. 550; Cooley, Taxation, 2d ed., 730; 3d ed., 1353.

The doctrine of the Kentucky cases is the same. *Odd*

*Fellows* v. *Dayton*, 25 Ky. Law Rep. 665; *Ward* v. *Beale*, 91 Kentucky, 65; *Henderson Bridge Co.* v. *Commonwealth*, 99 Kentucky, 623; *Royer Wheel Co.* v. *Taylor County*, 104 Kentucky, 741; *Coulter* v. *Louisville Bridge Co.*, 114 Kentucky, 42; *Albin Co.* v. *Louisville*, 117 Kentucky, 895; *Citizens National Bank* v. *Lebanon*, 118 Kentucky, 60; *Slaughter* v. *Louisville*, 89 Kentucky, 112; *Turner* v. *Pewee Valley*, 18 Ky. Law. Rep. 757.

Both as to Kentucky authorities and the law as expounded by this court and the authorities generally, the action of the assessing officers, whatever the form of the assessment, when completed, if it be of any force at all, becomes conclusive as to the value of the property embraced in the assessment; and that matter is not open to further inquiry in any court, and if in these proceedings the requisite notice and opportunity for hearing be not allowed, then the so-called assessment is void for want of due process of law. No other hearing can be the legal equivalent or substitute for the hearing the party to be affected is entitled to before the assessing officers, whose authority to value, and give relief against errors of valuation, is full and exclusive.

Tested by these well established principles, we submit that there cannot be any reason to doubt that the assessment in this case, made as stated above, is absolutely void.

The right of the city to the affirmative relief granted upon its cross-action must be tested by precisely the same principles, as would determine its right to such relief had it been sought in an original suit, brought by it for the collection of the tax levied on the assessment in controversy. The whole question, therefore, is whether the alleged assessment was such an assessment as could constitute the basis of any enforceable tax claim at all. If there was no valid assessment the court had no power to make one. No such power is conferred by statute, and the authorities, so far as we have seen them, deny any such power to the courts. Certainly such power does not pertain to the courts of Kentucky. *Palmer* v. *McMahon*, 133

U. S. 669; *Slaughter* v. *Louisville,* 89 Kentucky, 123, and authorities *supra.*

Until a valid assessment is made by an authorized officer, the city or municipality has no standing to enforce any claim.

*Mr. George C. Webb* and *Mr. George S. Shanklin,* with whom *Mr. J. R. Morton* and *Mr. E. P. Farrell* were on the brief, for defendants in error:

The decision of the Court of Appeals was based upon facts showing due process of law. Due process of law means notice, and an opportunity to be heard in such manner as adapted to the exigencies of the case. This requirement of due process of law was complied with in this case by the public notice which was given in accordance with the statute; by actual notice before the omitted property was assessed; by a full hearing given to the plaintiff in error in this suit as to the justice of such assessment. *Central Land Co.* v. *Laidley,* 159 U. S. 103; Kentucky Code, § 126; Pomeroy on Code Remedies, 623; *Reynolds* v. *Bowen,* 36 N. E. Rep. 756; *Clark* v. *Louisville Water Works,* 90 Kentucky, 524; Kentucky Statutes, § 3179; *Davidson* v. *New Orleans,* 96 U. S. 97; *Hagar* v. *Reclamation District,* 111 U. S. 701; *Kentucky Railroad Tax Cases,* 115 U. S. 321; 1 Cooley on Taxation, 3d ed., 61, 65; *Weyerhaueser* v. *Minnesota,* 176 U. S. 550; *Paulson* v. *Portland,* 149 U. S. 30; *Sturgis* v. *Carter,* 114 U. S. 511; *Foster* v. *Essex Bank,* 16 Massachusetts, 245; Greenleaf on Evidence, § 78; *Brandt* v. *Hyatt,* 7 Bush, 363; *Brown* v. *Young,* 2 B. Mon. 26; *Baldwin* v. *Shine,* 84 Kentucky, 502; *Gates* v. *Barrett,* 79 Kentucky, 295; *Stanley* v. *Board of Supervisors,* 121 U. S. 535; *McMillan* v. *Anderson,* 95 U. S. 37.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

There are in the State of Kentucky two distinct methods by which an assessment for so-called back taxes can be made. One method is an assessment by a special back tax assessor,

elected as provided for by an ordinance of the city of Lexington. This ordinance the Court of Appeals of the State of Kentucky has held, contrary to the contention of the plaintiff in this case, did not displace the regular assessor, or affect his right to make an assessment for back taxes. The other method provides for an assessment by the regular assessor, under section 3179 of the laws relating to the city of Lexington, which section, among other things therein contained, provides that: "Whenever the assessor shall ascertain that there has, in any former year or years, been any property omitted which should have been taxed, he shall assess the same against the person who should have been assessed with it, if living; if not against his representative."

In this case the assessment for back taxes was made by the regular assessor, but not until December 31, 1898, under the above quoted provision in section 3179. It was, however, a special assessment, made after the regular assessment in the assessor's books of 1898, and after such books had been transmitted within the time prescribed by law (sec. 3180) December 1, 1898, to the auditor, subject to the inspection of the public. In regard to the regular assessment the Statutes of Kentucky provide (section 3181) for a board of equalization, which sits on the first Monday of January, and continues in session not longer than four weeks. The auditor must deliver to the board the assessment books filed with him by the assessor, and it is to hear all complaints against the assessments made by the assessor, and may determine the same, but it cannot increase the assessment without notice to the party whose property is to be increased. The section is part of the general statutes as to assessments for the annual taxes, and it refers evidently to the assessments made by the assessor up to the first of December preceding, and which appear in the book which the law directs to be sent to the auditor and by him transmitted to the board of equalization. It does not refer to an extraordinary assessment made by the assessor for back taxes subsequently to the time provided for by law for

the making of the general assessment. The assessor must return the general assessment which he makes in his book under section 3179 to the auditor on or before December 1 in each year. (Section 3180.) This book remains in the auditor's office subject to the inspection of the public until transmitted, in the January following, to the board of equalization, under section 3181. In the case before us the assessment for the back tax was made December 31, 1898, by entering a separate assessment for each year in the assessor's book for that year, and, therefore, these various assessments were not contained in the books of the assessor, as they were sent to the auditor on December 1 of each year respectively. The assessor's books for the years prior to 1898 were obtained in some way, and the entries of the assessments were therein made, because, as stated, there were no other books provided. We find no provision of the statute as to assessments for back taxes which requires notice of such assessment if made at any time other than in the regular course for the general assessment as provided for in the general statute. If the assessment happens to be made in the assessor's book prior to December 1 in any year it, of course, goes with the book to the auditor, and remains there for inspection by the public until taken before the board of equalization. Such an assessment would carry with it the provision of the law of the State applicable to the city on the subject of assessments, including the general notice under the law providing for such assessment. But that, of course, cannot apply where the assessment is not made on or before December 1, in the regular assessment book. That book the taxpayer must omit to examine at his peril, when filed with the auditor, or when before the board of equalization. As sent to the auditor, December 1, 1898, the book did not contain the assessment in question. And as to the books of the former years, they had passed out of the legal custody of the assessor, and he could not take any of such books and, without notice, impose a conclusive assessment for back taxes for the particular year the book had been made

use of as an assessment book. Such assessment could not be enforced unless the taxpayer could thereafter at some time, and as a matter of right, be heard upon the question of the validity and the amount of such tax. The general statutory notice as to the regular assessment proceedings cannot be regarded as notice of this special assessment made years after the completion of the old assessments.

In regard to the question of notice, the Court of Appeals held that the burden of proof in such a proceeding as this was upon the plaintiff to establish that there was no notice of the assessment given it; but it also held that the defendant had, in fact, proved that there was notice given to the plaintiff in error before the assessment was made. This applies to a notice in fact, but the Court of Appeals did not hold that there was any notice made necessary by the statute in regard to such a special assessment as above described. An assessment made on December 31, 1898, in the manner set forth, although imposed before the meeting of the board of equalization in January following, was not imposed at a time which made the general statutes as to assessments applicable, and, therefore, the taxpayer had no statutory notice or opportunity furnished him to appear and be heard before the board. He may have examined the assessor's books for the various years 1894–1898, when filed in the auditor's office on the first of December, by the assessor, and prior to December 31, when this assessment was made, and found that there was no assessment made against him for any back taxes. There was no statutory obligation imposed on him to again examine the books lest perchance they may have had an interlined assessment made in them, for the making of which the law provided no notice. It follows that the subsequent assessments placed in such books and not appearing on any book when sent to the auditor by the assessor, would not be made under any statutory provision for notice, and would not afford the taxpayer an opportunity to be heard before the board of equalization in regard to the illegality of such tax.

If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is, whether any notice is provided for by the statute. *Stuart* v. *Palmer*, 74 N. Y. 183. Before this special assessment could be actually enforced or during the process of enforcement the taxpayer must have an opportunity to be heard as to its validity and extent. In *Wayerhaueser* v. *Minnesota*, 176 U. S. 550, it was held that the taxpayer was entitled to an opportunity to be heard before the tax could be enforced (see page 556); that the filing of the tax list therein spoken of was, in effect, as held by the court, the institution of an action against each tract of land described in it, and the taxpayer thereafter had opportunity to make any defense he might have. This the court held was sufficient. The proceedings leading up to that assessment originated in a complaint, in writing, to the governor, who thereupon appointed a commission to hear the matter, and if proper, impose the tax, but before it could be enforced or during the process of collection the landowner had a right to be heard. The statute now before us does not provide for a notice of the special assessment, nor did the plaintiff have an opportunity to be heard as to the assessment before the board of equalization.

But in this case the state court has afforded to the taxpayer full opportunity to be heard on the question of the validity and amount of the tax, and after such opportunity has rendered a judgment which provides for the enforcement of the tax as it has been reduced by the court, the reduction amounting to over five thousand dollars. The plaintiff has, therefore, been heard, and on the hearing has succeeded in reducing the assessment. What more ought to be given? Whether the opportunity to be heard which has been afforded to the plaintiff has been pursuant to the provisions of some statute, as in *McMillen* v. *Anderson*, 95 U. S. 37, and *Hagar* v.

*Reclamation District*, 111 U. S. 701, or by the holding of the court that the plaintiff has such right in the trial of a suit to enjoin the collection of the tax, is not material. The state court in this case has held the taxpayer entitled to a hearing and has granted and enforced such right, and upon the trial has reduced the tax. In so doing the court below has not assumed the legislative function of making an assessment. It has merely reduced, after a full hearing, the amount of an assessment made by the assessor under color at least of legis-- lative authority.

The Court of Appeals has held that the power of the trial court in giving the hearing has been properly exercised.

It is urged that the court below has not in fact decided that the assessment against plaintiff as reduced was legal, but only that plaintiff will not be heard upon the question of enjoining the collection of the tax until plaintiff tenders the amount of tax equitably due. The plaintiff denies that there is any amount equitably due, and it contends that it has not had an opportunity to show the invalidity of the assessment. We think the contention not well founded. The court has held that the burden rested upon the plaintiff to show the invalidity of the tax. Even if erroneous this decision is not one of a Federal nature. It had the chance, at all events, to show the invalidity of the tax in whole or in part. Upon the evidence given on the trial the tax was reduced, and the Court of Appeals has said:

"The claim of appellant to escape a retrospective assessment of the property of its *cestui que trust* in this case is wholly technical. That it owes the tax it seeks to evade is made apparent by an examination of this record. Although it had in its hands the means of instantly and most conclusively showing either that the trust estate did not own the property with which it was assessed, or that the values were too high, it introduced no evidence whatever on this subject. While it was not incumbent on the appellees to introduce any evidence, being authorized under the principles herein enunciated to

await the evidence of appellant showing the invalidity of the assessment complained of, yet they did introduce evidence which we think clearly establishes that appellant justly owes the amount of the tax which has been adjudged against the estate of its *cestui que trust.*"

· We think it sufficiently appears that the plaintiff had an opportunity to be heard upon the question of the validity of the tax, both for want of notice in fact, and whether the property assessed for back taxes had really been omitted from the original list for the years in question, and was therefore properly taxable under the assessment for back taxes. Even if the assessment had been made by the assessor without notice, yet if upon the hearing in this cause the plaintiff had the right and an opportunity to be heard, and the assessment was thereon reduced, it has obtained all the hearing it was entitled to. We think the plaintiff did have such a hearing, and the judgment is correct, so far at least as this court is authorized to review it. It is therefore

*Affirmed.*