**ORCUTT, County Treasurer, v. CRAWFORD et al.***

**No. 1399.**

Circuit Court of Appeals, Tenth Circuit.
July 28, 1936.

James A. Greenwood, of Cheyenne, Wyo. (George A. Weedell and Harold I. Bacheller, both of Casper, Wyo., on the brief), for appellant.

C. R. Ellery, of Cheyenne, Wyo., for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

*Writ of certiorari denied 57 S. Ct. 119, 81 L. Ed. —.

BRATTON, Circuit Judge.

This is an action instituted by the receivers of Producers & Refiners Corporation against the treasurer of Natrona county, Wyo., to restrain the collection of ad valorem taxes in the sum of $1,914.69 for the year 1933; and the questions for determination are (1) whether the discharge of the receivers divested the court of further jurisdiction of the cause and (2) whether an assessment made by a county treasurer under the provisions of section 115-139, Revised Statutes of Wyoming 1931, after the county board of equalization has finally adjourned, contravenes the due process provisions of the Fourteenth Amendment and of the Constitution of the State (article 1, § 6).

The facts are without dispute. Producers & Refiners entered into a contract with the United States for the purchase of all royalty oil accruing to the United States in the Salt Creek field for a period of three years beginning January 1, 1932. Soon afterwards the company entered into separate contracts with Texas Company and White Eagle Oil Corporation in which it agreed to sell to each of them one-third of such royalty oil as it accrued in the field. In May, 1932, the court below appointed receivers of Producers & Refiners for the purpose of conducting its business for a period of time and, if necessary, to liquidate the assets and make distribution of the proceeds among the creditors and stockholders under the direction of the court. The royalty oil which accrued during the year 1932 was delivered as it accrued, one-third to Texas Company, one-third to White Eagle Company, and one-third to Producers & Refiners prior to receivership and to the receivers thereafter. In March, 1933, the receivers caused tax schedules covering all of the property belonging to the estate situated in Natrona county which they believed subject to tax to be filed with the county assessor. The matter of including the royalty oil was the subject of discussion between a representative of the receivers and the assessor. The assessor asserted that it was subject to tax and should be included. It was contended on behalf of the receivers that royalty oil accruing to the United States was exempt from taxation and therefore none of the oil purchased under the contract was listed. The assessor presented the matter to the county board of equalization at its meeting which commenced on the fourth Monday in

May and urged that the oil be added to the tax roll, but the board declined to add any part of it. On or about November 29th, after the board had taken final adjournment for the year, the assessor prepared a schedule in the name of the receivers and included all of such oil at its average value. He delivered the schedule to the treasurer. The treasurer thereupon added the oil to the tax roll and made an assessment against the receivers. The receivers then instituted this action. Thereafter an order was made in the receivership proceeding, dated July 16, 1934, which discharged the receivers from further duties, responsibilities, and liabilities with the proviso that this action "may be prosecuted to a final determination of the issues involved therein in the name of said Receivers by Sinclair Wyoming Oil Company, transferee of Consolidated Oil Corporation, pursuant to the stipulation relating thereto entered into between said Receivers and said Sinclair Wyoming Oil Company as of May 21, 1934."

The trial court determined that the discharge of the receivers did not oust the court of further jurisdiction of this cause; that it could be prosecuted to final conclusion in their names; that the assessment was made without any provision for notice and opportunity for the taxpayer to be heard; and that for such reason it contravened the due process provisions of the Fourteenth Amendment and of the Constitution of the State. Judgment was entered restraining collection of the taxes, and the treasurer appealed.

▇▇▇ The jurisdiction of the trial court to proceed further with this case after the discharge of the receivers is challenged. The filing of the bill in the receivership proceeding and the appointment of receivers conferred jurisdiction upon the court over the estate of the corporation with power to decide all questions relating to the preservation, collection, and distribution of the assets without reference to citizenship or the amount in controversy. That jurisdiction included the making of orders in the original proceeding and cognizance of ancillary actions appropriately instituted by the receivers in behalf of the estate. White v. Ewing, 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67; Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Green-Boots Const. Co. v. Hays (C.C.A.) 56 F. (2d) 829. The court was vested with such jurisdiction at the time the receivers in-

stituted this action which presented a property right of the estate ancillary to the main proceeding and the order of discharge did not discharge the receivers in toto or surrender jurisdiction of this action. Instead, it was expressly provided that this action might be prosecuted to final conclusion in the names of the receivers. The effect of that provision was to continue the receivership for that particular purpose and to reserve jurisdiction of this cause. The reference to a stipulation between the receivers and Sinclair Wyoming Oil Company is not determinative. Apart from the probative force of the stipulation or the lack of it, the court had power to continue the receivership for the purpose of prosecuting this action to its conclusion. That power was exercised, and in consequence the jurisdiction which had previously attached was not yielded. Keith Lumber Co. v. Houston Oil Co. (C.C.A.) 257 F. 1, certiorari denied 250 U.S. 666, 40 S.Ct. 13, 63 L.Ed. 1197.

■ The more serious question relates to the validity of the tax. It is made the duty of the county assessor in Wyoming, beginning on the first Monday in February of each year, to visit each person in the county, obtain full information concerning the kinds and value of his property subject to tax, and make a schedule of it. The assessor may make additions or deductions in the schedule in order that it shall represent the actual cash market value of the property listed, but changes must be noted, and it must be stated whether they were made before or after the schedule was verified. The tax roll is prepared from the schedules thus made and submitted to the board of county commissioners sitting as a board of equalization. Section 30-306, Revised Statutes 1931. The board of equalization convenes at the office of the county clerk on the fourth Monday in May for the correction and completion of the tax roll; and in a county of the first class—Natrona county is of that class—it continues in session not to exceed seven days. It convenes again on the second Monday in June and remains in session not less than three nor more than six consecutive days. The assessor is required to attend all such sessions and furnish information about assessments. Section 115-2201. At the first session the board may add omitted property and assess the value of it; hear and determine complaints in respect to assessments; and increase, diminish, or other-

wise alter and correct assessments and valuations. Section 115-2202. If an assessment is increased, the county clerk or person acting as clerk of the board is required to give personal or written notice thereof to the owner, his agent or attorney, sections 115-2203, 115-2204; and if the owner feels aggrieved, he may appear before the board in person or make written complaint at its second meeting. Sections 115-2204, 115-2205. It is then provided that the county treasurer may assess property which has escaped the assessor and the board of equalization. Section 115-139 reads: "In cases where any county treasurer shall discover or have his attention called to the fact that any assessor in any previous year shall have omitted to return, or shall in any future year omit to return any lands, town lots, or any improvements, structures or fixtures thereon, and also any kind of personal property, subject to taxation, situated within his county, or if any such property has escaped taxation by reason of any error of said treasurer, it shall be the duty of said treasurer to ascertain the value thereof, for taxation during the year or years so omitted, as near as may be, and to enter said lands, town lots, or any improvements, structures or fixtures thereon, and also any kind of personal property, upon the tax rolls of the county then in the hands of the county treasurer of such county, and to add to the taxes of the current year the simple taxes of each and every preceding year in which such property shall have escaped taxation, as far back as five years prior thereto, unless in the meantime said property shall have changed ownership, in which case only the taxes chargeable since the last change of ownership shall be added; or the owner of such property may, if he desires, pay the amount of such back taxes into the county treasury on the order of the county assessor. It is hereby made the duty of each county assessor to direct the attention of the county treasurer to all cases where property has escaped taxation in previous years, immediately upon his discovery of such omission."

The tax involved was assessed under that section. It will be noted that the statute fails to make provision for the taxpayer to be heard in any manner before any officer or tribunal. Numerous cases have presented the validity of a tax which is imposed without a hearing, and it is now settled law that an opportunity to be heard before the tax becomes final is essential.

The hearing may be informal and no procedure may be fixed or required; but there must be an opportunity for a hearing of some kind at some juncture of the proceedings before the tax becomes irrevocably fixed. If not, it violates due process. Security Trust & Safety Vault Co. v. Lexington, 203 U.S. 323, 27 S.Ct. 87, 51 L.Ed. 204; Central of Georgia Ry. Co. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134, 12 Ann. Cas. 463; Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L. Ed. 1103; Turner v. Wade, 254 U.S. 64, 41 S.Ct. 27, 65 L.Ed. 134; Montana-Dakota Power Co. v. Weeks (D.C.) 8 F.Supp. 935.

 But it is argued with earnestness that section 89-4201 of the statutes affords an opportunity to be heard. That section provides that the district courts of the state shall have jurisdiction to enjoin the illegal levy of taxes and the collection of illegal taxes and of actions to recover back such taxes without regard to their amount. It relates exclusively to taxes which are illegal and merely authorizes the court to restrain their levy or collection or to award judgment for their return without the presence of other recognized elements of equitable jurisdiction. But it does not create a right to be heard on the question of excessive valuation resulting from an error of judgment as distinguished from willful and systematic over-valuation which is an indicia of fraud. A hearing on a grievance of that kind is not authorized. The Supreme Court of the State has so construed the statute. Board of Commissioners v. Searight Cattle Co., 3 Wyo. 777, 31 P. 268; Bunten v. Rock Springs Grazing Ass'n, 29 Wyo. 461, 215 P. 244; Baker v. Paxton, 29 Wyo. 500, 215 P. 257. And that construction is binding here. Marine National Exchange Bank v. Kalt-Zimmers Mfg. Co., 293 U.S. 357, 55 S.Ct. 226, 79 L.Ed. 427; Denver-Greeley Valley Irr. Dist. v. McNeil (C.C.A.) 80 F.(2d) 929. Due process of law exacts an opportunity for a hearing in respect to excessive valuation caused by a mistake of judgment.

Strong reliance is placed upon the case of Corthell v. Board of Commissioners, 44 Wyo. 71, 8 P.(2d) 812, 817, but it is beside the mark. That was an action to recover a refund of the tax on an automobile paid under protest. A firm of dealers listed and returned all of their property subject to tax. The automobile in question was included as a part of their stock. That was done in February, and in March plain-tiff listed his property for taxes. Nine days later he bought the automobile from the dealers and continued to own it throughout the remainder of the year, but did not list it. The assessor inserted it in his list and entered it on the roll against him. The exact time of that action was not disclosed. Plaintiff paid all of the taxes assessed against him and then applied to the board of county commissioners for a refund of the tax on the automobile. Refund was refused and the suit followed. It was contended that failure to give notice of the addition of the automobile to the list of property with the increase in taxes constituted want of due process of law. The court said: "In addition, it may be observed that plaintiff in error knew that a listing of all property in the county for taxation was in progress; he knew, too, that he was the owner of the automobile, and that he had not listed the same; he was chargeable with knowledge of the provisions of the law relative to listing personal property on the first day of April of each year, and that the law directed the secretary of state to send daily to the assessor of the county a duplicate copy of the certificate of registration of each motor vehicle registered by residents of the county and also authorized and required the assessor to add omitted property subject to taxation when called to his notice and to submit the same to the county board of equalization for consideration. This being so, and indulging the presumption that the officials would obey the law, it is but logical to conclude that plaintiff in error had such knowledge as would make it incumbent on him to appear before the county board of equalization, if he desired to question the validity of the tax." There the addition may have been made before the board of equalization convened. Here it is admitted that the board refused to add the oil and that the treasurer made the assessment long after the board ceased to exist. If the assessor had added it before the board convened or if the board had made the addition, there would be basis for the contention that the statutes gave the receivers notice that additions could be made in that manner; that the board would convene in public session at the fixed time and place; and that they could appear before it and be heard in respect to the assessment. That is the philosophy of Corthell v. Board of Commissioners, and there are other cases in which taxes were sustained for like reason. State Railroad Tax Cases, 92 U.S.

575, 610, 25 L.Ed. 663; Kentucky Railroad Tax Cases, 115 U.S. 321, 6 S.Ct. 57, 29 L. Ed. 414; Pittsburg, C. C. & St. L. Railway Co. v. Backus, 154 U.S. 421, 14 S.Ct. 1114, 38 L.Ed. 1031. But this assessment was made after the board ceased to exist, and for that reason those provisions of the statutes have no potency whatever.

Whether the property could have been or can now be assessed in some other way is a matter not before us. We merely hold that an assessment is invalid if made under section 115-139 of the statutes after the board of equalization has adjourned for the year and with no opportunity for the taxpayer to be heard.

The decree is affirmed.