CHRYSLER CORPORATION, Plaintiff,

v.

James R. SCHLESINGER, Secretary,
United States Department of
Defense, et al., Defendants.

Civ. A. No. 75–159.

United States District Court,
D. Delaware.

April 20, 1976.

Burt A. Braverman, Borovsky, Smetana, Ehrlich & Kronenberg, Washington, D. C., and Michael D. Goldman, Potter, Anderson & Corroon, Wilmington, Del., for plaintiff.

Kent Walker, First Asst. U. S. Atty., Wilmington, Del., for defendants.

## OPINION

LAYTON, Senior District Judge.

Plaintiff, Chrysler Corporation, is engaged, *inter alia*, in the manufacturing of automobiles, air conditioning and heating equipment and chemical and metal products. Plaintiff transacts business throughout the United States. A portion of Plaintiff's business is comprised of contracts and subcontracts with the United States and its agencies.

Executive Order 11246, as amended 3 C.F.R. E.O. 11246, requires that government contractors refrain from discriminatory employment practices. Section 202 of the Executive Order requires that all large government contracts contain seven specific paragraphs set forth in that section. Plaintiff's contract with the Government contains the required language.

The fourth of the numbered paragraphs set forth in section 202 requires that the contractor comply with all provisions of Executive Order 11246 and of the rules, regulations and relevant orders of the Secretary of Labor. The Secretary of Labor has promulgated regulations pursuant to section 201 of the Executive Order which are found at 41 C.F.R. § 60–1.1 *et seq.*

Executive Order 11246, as amended, and the regulations promulgated thereunder require government contractors to submit equal opportunity reports and programs to the Office of Federal Contract Compliance ("OFCC") or the Department of Labor and various OFCC compliance agencies, including the Defense Supply Agency ("DSA"). 3 C.F.R. E.O. 11246, § 203; 41 C.F.R. §§ 60–1.2 and 60–1.6. Failure of a government contractor to comply with the Executive Order and the regulations can result in the cancellation of existing contracts and debarment of the contractor from future contract awards. 3 C.F.R. E.O. 11246, § 209.

The DSA has acted as the compliance agency for Plaintiff. Pursuant to the Executive Order and the regulations, which have been incorporated into Plaintiff's contract with the Government, Plaintiff has been required to file the Standard Form 100 ("EEO–1") with the Joint Reporting Committee ("JRC") which collects the form for the DSA. A separate form must be filed for each of Plaintiff's domestic facilities and a separate one for Plaintiff's entire corporate domestic operation. 41 C.F.R. § 60–1.7; Stip. par. 3.

The EEO–1's prepared and filed by Plaintiff contain statistical information with respect to the total number of persons employed, and the number of minority and female persons employed, by Plaintiff in nine general job categories. Stip. par. 3.

Plaintiff has also been required, pursuant to the regulations incorporated into its contract with the Government, to prepare Affirmative Action Plans ("AAP's") for its entire corporate domestic operation and separately for each of its individual domestic facilities. 41 C.F.R. § 60–1.40; Stip. par. 4. In its AAP's, Plaintiff is required to include a great deal of detailed employment information, both statistical and narrative in nature, concerning Plaintiff's total, and minority and female, employment for each of Plaintiff's specific, internally used job classifications. 41 C.F.R. § 60–1.40(a); Stip. par. 4. In this respect each of Plaintiff's AAP's includes information on staffing patterns, pay scales, actual and expected shifts in employment, promotions, seniority and related job matters. Plaintiff's AAP's are also required to include forecasts of future employment; to set out goals, time tables and future projections for the employment, promotion and utilization of minorities and females; and to include an analysis of Plaintiff's success in meeting such goals. 41 C.F.R. § 60–1.40(b); Stip. par. 5.

Plaintiff is not required regularly to file its AAP's with the DSA, but the DSA regularly conducts "compliance reviews," pursuant to 41 C.F.R. §§ 60–1.20 and 60–60.3, to determine whether Plaintiff is in compliance with the Executive Order and the regulations promulgated thereunder. During the course of such compliance reviews, which consists of an examination of Plaintiff's affirmative action documents and also an on-site examination of Plaintiff's facilities, Plaintiff is required, pursuant to the regulations incorporated into its contract with the Government, to submit pertinent AAP's for its domestic facilities. 41 C.F.R. §§ 60–1.40(c) and 60–60.3(a); Stip. par. 5.

At the conclusion of a compliance review of one of Plaintiff's facilities, the Government's compliance review officer prepares a compliance review report ("CRR"). 41 C.F.R. § 60–60.3. The report includes information submitted to him by Plaintiff, analyzes Plaintiff's compliance with the Executive Order and the regulations, and contains recommendations to the regional office of the DSA on action which should be taken against Plaintiff and the corrective measures which Plaintiff should be required to implement. 41 C.F.R. §§ 60–1.7 and 60–60.3; Stip. par. 5.

The DSA also administers regulations, applicable to Plaintiff pursuant to the contractual agreement, which provide for the filing of complaints alleging violations of Executive Order 11246 and for the investigation and resolution of such complaints. 41 C.F.R. § 60–1.24. These complaints may be filed by job applicants and employees of a government contractor. 41 C.F.R. § 60–1.21.

In investigating a complaint, the DSA generally requests copies of, and reviews, the Plaintiff's AAP's, EEO–1's and related supporting material. Stip. par. 6. DSA is required to file a complaint investigation report ("CIR") with OFCC within sixty days of receipt of the complaint. 41 C.F.R. § 60–1.24(d).

On May 14, 1975, DSA notified Plaintiff by telephone that DSA had received a request for the public disclosure of the 1974 AAP and the report of an October, 1974, complaint investigation for Plaintiff's Newark, Delaware, assembly plant. Stip. par. 9.

By letter dated May 23, 1975, Plaintiff objected to the proposed disclosure of the AAP and the CIR for the Newark, Delaware, plant. Stip. par. 10.

On May 30, 1975, DSA notified Plaintiff by telephone that DSA would disclose the documents on June 4, 1975. Stip. par. 11.

On July 1, 1975, DSA notified Plaintiff by telephone that it had received a request for the public disclosure of the AAP's and CRR's for the Plaintiff's Hamtramck, Michigan, facility. Stip. par. 12.[1]

By letters dated July 3, 1975, and July 11, 1975, Plaintiff objected to the proposed disclosure of the documents relating to its Hamtramck, Michigan, facility. Stip. par. 13.

By letter dated July 18, 1975, DSA notified the Plaintiff that DSA would disclose the documents on July 25, 1975. Stip. par. 14.

In response to the threatened disclosures, Plaintiff has filed a complaint in this Court seeking declaratory and injunctive relief. This Court issued a preliminary injunction against the threatened disclosures.

## JURISDICTION

A factual hearing was held over the Government's objection that the Court lacked subject matter jurisdiction of the case. The Court reserved its decision on this issue until a decision on the merits could be rendered.

The complaint contains three numbered counts: 1) that 41 C.F.R. § 60–40.1 et seq., 29 C.F.R. § 70.1 et seq., and 5 U.S.C. § 552 violate Plaintiff's right to due process of law because they do not require predisclosure notice and hearing;[2] 2) that the threatened disclosure is an unlawful abuse of agency discretion and that the Secretary of Labor has exceeded his authority in issuing the regulations upon which the disclosure is based because the threatened disclosures and regulations are in conflict with 42 U.S.C. § 2000e–8(e), 44 U.S.C. § 3508 and 18 U.S.C. § 1905;[3] 3) that the threatened disclosure is an unlawful abuse of agency discretion as the disclosure violates 41 C.F.R. § 60–40.3 and 29 C.F.R. §§ 70.21, 70.22, 70.24 and 70.31.[4]

■ The Court holds that it has jurisdiction of the case under 28 U.S.C. § 1331 and that the case arises in part under the Fifth Amendment to the United States Constitution.[5] Bell v. Hood, 327 U.S. 678, 680–83, 66 S.Ct. 773, 774–775, 90 L.Ed. 939, 942–43 (1946). Having so decided, the Court further holds that the Court may conduct a

---

1. In its Second Amended Verified Complaint, Plaintiff alleged that the Government intends to disclose an EEO–1 submitted by Plaintiff. The administrative records of the Government's decisions to disclose do not indicate this. Nor did Plaintiff show the Court that an EEO–1 had been attached to any of the documents that the Government intends to disclose. This being so, the Court finds that the Plaintiff has failed to prove that the Government intends to disclose an EEO–1.

2. Plaintiff's Count III, Second Amended Verified Complaint.

3. Plaintiff's Count I, Second Amended Verified Complaint.

4. Plaintiff's Count II, Second Amended Verified Complaint.

5. ". . . And a cause of action may be supported by two or more grounds, and if one ground involves a substantial federal question that is sufficient to give the federal court jurisdiction to decide the merits of the entire cause of action, even though the federal claim is not sustained, . . . ." 1 Moore's Federal Practice, ¶ 0.60 [8.–3], P. 634.

review, under 5 U.S.C. § 701 *et seq.,* of the agency's decision to disclose. While 5 U.S.C. § 702 is not considered a jurisdiction-granting statute in the Third Circuit, the Court has jurisdiction of the case under 28 U.S.C. § 1331, which provides the independent basis of jurisdiction required by *Bachowski v. Brennan,* 502 F.2d 79, 82 (3rd Cir. 1974), *rev'd on other grounds,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

## PUBLIC DISCLOSURE OF INFORMATION BY AN AGENCY

■ The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, divides the information within the Government's control into two kinds: 1) information which must be disclosed upon request and 2) information which may or must be withheld from a requestor. *Charles River Park "A", Inc. v. HUD,* 171 U.S.App.D.C. 286, 519 F.2d 935, 942 (1975).

■ The FOIA requires the Plaintiff in this "reverse" Freedom of Information case to prove that the information requested is not in the category of information which must be disclosed upon request. To do this, Plaintiff must prove that the information sought by the requestor is within one of the nine categories of information excepted from mandatory disclosure in 5 U.S.C. § 552(b).[6] *Sears, Roebuck & Co. v. GSA,* 402 F.Supp. 378, 383 (D.D.C.1975).

The Plaintiff has failed to prove that any category other than 5 U.S.C. § 552(b)(4) is applicable to any of the requested information. Further, Plaintiff has failed to prove that 5 U.S.C. § 552(b)(4) is applicable to any information other than the manning tables contained in the AAP's and CRR's.

At the evidentiary hearing, Plaintiff placed a copy of an AAP (Px–1) and a CRR (Px–4) in evidence and called four principal witnesses: Mr. Harris, Plaintiff's "Manager of personnel administration at the corporate level"; Mr. Dussey, Plaintiff's "manager of personnel research"; Mr. Kerr, Plaintiff's "assistant corporate controller"; and Dr. Plotkin, a "senior economist" employed by Arthur D. Little, Inc., an accounting firm.

Most of the evidence presented by the Plaintiff related to an AAP for the Newark, Delaware, facility (Px–1). Harris testified that the AAP contains "manning" tables for each subdepartment of the facility. (Tr. 31). The manning tables are lists of the Plaintiff's internally used job titles and the number of people who perform

---

**6.** 5 U.S.C. § 552(b):

"This section does not apply to matters that are—

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and

(B) are in fact properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempt from disclosure by statute;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells. Any reasonably segregated portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section."

each job. (Tr. 29). The number of people who perform the job is known as the "population," and the population is broken down by sex and race. (Tr. 29).

Similar manning tables can be found in the CRR, Px–4. Thus, much of the evidence introduced to explain the importance of the AAP to Plaintiff applies with equal force to the CRR.

■ Plaintiff has contended, and proved to the satisfaction of the Court, that the manning tables contained in the AAP and CRR are confidential commercial information within the meaning of 5 U.S.C. § 552(b)(4). In order to be so, the information must be: 1) confidential and 2) such that release could cause Plaintiff substantial competitive harm. *National Park & Conservation Assn. v. Morton*, 162 U.S.App. D.C. 223, 498 F.2d 765, 770 (1974).

■ The testimony clearly shows that the manning tables are confidential. Harris and Dussey testified that the AAP's prepared by Plaintiff have not been released to anyone. (Tr. 57, 74–75). Dussey testified that manning tables have never been disclosed and that a job classification's population has never been disclosed. (Tr. 103). Plotkin testified that personnel data similar to the manning tables is not available elsewhere (Tr. 227), and the Government failed to show the contrary.

The record also establishes that the release of the manning tables could cause Plaintiff substantial competitive harm in several different ways. First, the possession of such a document could aid another corporation in its practice of employee raiding, a practice not unknown in the automobile industry. (Tr. 41). The manning tables, with their race and sex breakdown, would aid a potential employer in identifying a Chrysler employee with just the skills, race and sex it needs. (Tr. 45–47). Employee raiding is particularly helpful in meeting minority and female hiring goals and requirements. (Tr. 42–43). Losses of such employees are expensive to the Plaintiff because they distract employees from their jobs and the loss of an employee means the loss of the funds spent training him. (Tr. 43–44).

Second, the possession of a manning table would permit a competitor to determine the exact use of Plaintiff's labor force, and thus the technology being applied by Plaintiff. Plotkin demonstrated this by diagraming Plaintiff's Newark, Delaware, facility based solely upon the information contained in the manning tables. His diagram was introduced into evidence as Px–9. Such a diagram would be useful in comparative analysis and would alert competitors to areas worth their managerial time. (Tr. 162–63; Tr. II 27).

Third, the possession of manning tables produced over several years would allow Plaintiff's competitors to reduce their risk-taking. (Tr. II 54–55). All automobile manufacturers purchase machinery from the same producers. (Tr. II 52–55). Allowing Plaintiff to buy newly designed equipment and waiting to see the changes in employee utilization reflected in the different years' manning tables would allow the competitor to determine whether the machinery decreases or increases labor costs. (Tr. II 55–56). After reading Plaintiff's test results from the manning tables, the competitor would know whether or not the new equipment was a good investment.

Having found that the manning tables contained in the AAP's and CRR's are exempt from mandatory disclosure,[7] they are found to be of the second type of information created by the FOIA, information which may or must be withheld. Information of this type is not controlled by the FOIA, but by regulations promulgated un-

7. Data similar to that found in EEO–1's can be found in the AAP's. This data is far less detailed than that found in the manning tables. The data is broken down into only nine general job categories. Plaintiff failed to meet its burden of proof to show that the release of such general data could cause substantial competitive harm. Therefore, this data is not within the 5 U.S.C. § 552(b)(4) exemption to the general rule of mandatory disclosure.

der 5 U.S.C. § 301.[8] *Charles River Park "A", Inc.*, 519 F.2d at 942.

5 U.S.C. § 301 is the general statute providing for the promulgation of regulations for the use and custody of government records. Pursuant to this statute, the Secretary of Labor promulgated 29 C.F.R. § 70.21(a)[9] which is applicable to DSA as a delegate of powers of the Department of Labor's OFCC. (*See*, 41 C.F.R. § 60–1.6).

29 C.F.R. § 70.21(a) forbids the agency to disclose information that would expose the disclosing employee to criminal liability under 18 U.S.C. § 1905.[10] That criminal statute makes it illegal for a government employee to disclose confidential statistical data submitted to the Government by a corporation.

■ The manning tables contained in the AAP's and CRR's consist entirely of confidential commercial statistical data. All of the statistics were submitted by Plaintiff, a corporation. Therefore, an employee disclosing the manning tables contained in the AAP's and CRR's would face criminal liability under 18 U.S.C. § 1905. Such a disclosure is forbidden by 29 C.F.R. § 70.21(a).

■ The DSA's decision to disclose the manning tables violates 29 C.F.R. § 70.21(a). An agency which violates its regulations is acting contrary to law, within the meaning of 5 U.S.C. § 706(2)(A),[11] and may be en-

---

8. 5 U.S.C. § 301:
 "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."

9. 29 C.F.R. § 70.21(a):
 "Pursuant to the provisions of 18 U.S.C. 1905, every officer and employee of the Department of Labor is prohibited from publishing, divulging, disclosing, or making known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with the Department or any agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association. No officer or employee of the Department of Labor shall disclose records in violation of this provision of law."

10. 18 U.S.C. § 1905:
 "Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such depart-

ment or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment."

11. 5 U.S.C. § 706:
 "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
 (1) compel agency action unlawfully withheld or unreasonably delayed; and
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional right, power, privilege, or immunity;
 (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
 (D) without observance of procedure required by law;
 (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
 (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

**178**

joined from so doing. *See, S.S. Logging Co., Inc. v. Barker*, 366 F.2d 617, 624 n. 6 (9th Cir. 1966); *Delaware v. Bender*, 370 F.Supp. 1193, 1203 (D.Del.1974). Therefore, the Court will enjoin the disclosure of the manning tables found in the AAP's and CRR's.

In light of the foregoing, it is not necessary to discuss the other regulations cited by Plaintiff in Count II of its complaint.

 Nor is it necessary to discuss the alleged conflict between the Government's disclosure regulations and the statutes cited by Plaintiff in Count I of its complaint. From what has been said above, it is clear that the regulations do not conflict with 18 U.S.C. § 1905. That section is fully incorporated into the Government's disclosure regulation 29 C.F.R. § 70.21(a). The other criminal statute cited by Plaintiff, 42 U.S.C. § 2000e–8(e) does not apply to this fact pattern for the reasons stated in *Sears, Roebuck & Co. v. GSA*, 166 U.S.App.D.C. 194, 509 F.2d 527 (1974).

Plaintiff's final claim is that the FOIA and the Government's disclosure regulations violate the Fifth Amendment to the United States Constitution because they do not require that Plaintiff be given notice of an FOIA request for disclosure of information submitted to the Government by Plaintiff and they do not require that Plaintiff be given a hearing prior to disclosure in response to such a request.

 The Fifth Amendment requires that the Government grant notice and a hearing to a corporation before it deprives it of property. *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Security Trust Co. v. Lexington*, 203 U.S. 323, 27 S.Ct. 87, 51 L.Ed. 204 (1906). 41 C.F.R. § 60–60.4(d) [12] provides for a hearing prior to the public disclosure of information submitted by the Plaintiff. This regulation provides that the AAP's and the data which Plaintiff supplies for the CRR's may be claimed by the Plaintiff to be non-disclosable at the time they are submitted to DSA.[13] The regulation provides Plaintiff with the opportunity to specify why it believes the information to be non-disclosable and provides for a determination of Plaintiff's claims within ten days. It also allows Plaintiff ten days in which to appeal to the Director of OFCC and requires the Director to decide the appeal in ten days. The decision of the Director is a final agency deci-

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

12. 41 C.F.R. § 60–60.4(d):
"*Public access to information.* Information obtained from a contractor under Subpart B will be subject to the public inspection and copying provisions of the Freedom of Information Act, 5 U.S.C. 552. Contractors should identify any information which they believe is not subject to disclosure under 5 U.S.C. 552 and should specify the reasons why such information is not disclosable. The Contract Compliance Officer will consider the contractors claim and make a determination, within 10 days, as to whether the material in question is exempt from disclosure. The contract compliance officer will inform the contractor of such a determination. The contractor may appeal that ruling to the Director of OFCC within 10 days. The Director of OFCC shall make a final determination within 10 days of the filing of the appeal. However, during the conduct of a compliance review or while enforcement action

against the contractor is in progress or contemplated within a reasonable time, all information obtained from a contractor under Subpart B except information disclosable under §§ 60–40.2 and 60–40.3 of this chapter is to be considered part of an investigatory file compiled for law enforcement purposes within the meaning of 5 U.S.C. 552(b)(7), and such information obtained from a contractor under Subpart B shall be treated as exempt from mandatory disclosure under the Freedom of Information Act during the compliance review."

13. Plaintiff has argued that 41 C.F.R. § 60–60.4(d) does not provide for a claim of non-disclosability at the time of submission of information to the Government, but rather at the time an FOIA disclosure request is received. Such a reading of the regulation's language is possible. However, when 41 C.F.R. § 60–60.4(d) is read with the rest of the subpart, it becomes clear that the regulation is speaking of the time of submission of information. Further, Plaintiff's reading of 41 C.F.R. § 60–60.4(d) would place it in conflict with the time limitations found in 5 U.S.C. § 552(a)(6)(A).

sion reviewable under 5 U.S.C. § 701 *et seq.* Thus, the regulations grant Plaintiff a constitutionally adequate hearing.

The record shows that Plaintiff was in fact given a predisclosure hearing. Pursuant to 32 C.F.R. § 1285.7(b)(7),[14] Plaintiff was notified that an FOIA request to disclose information which Plaintiff had submitted had been received by the DSA. Plaintiff was given an opportunity to submit written objections to, and written arguments against, the public disclosure of the requested information. DSA decided to disclose the manning tables, among other documents, and it is this decision which the Court has reviewed and found contrary to the agency's regulations.

In conclusion, the Court, having found that the disclosure of the manning tables contained in the AAP's and the CRR's is contrary to 29 C.F.R. § 70.21(a) and that the agency decision to disclose the manning tables is contrary to law, the Court will enter a permanent injunction against the disclosure of the manning tables.

What has been said herein shall constitute findings of fact and conclusions of law.

Parties will submit proposed orders in the light of this opinion.

---

14. 32 C.R.F. § 1285.7(b)(7):

"When a request is received for records which were obtained by DSA from a non-U.S. government source; or contain information obtained by DSA from non-U.S. government source and because of the source and the nature of the records or information, there is reason to believe that the source of the information or records may object to release and may have an enforceable right to prevent release, prompt notification of intended release shall be given to the source. Release will normally be withheld until the source has a reasonable time to comment on the proposed release. Comments received will be considered in determining the releasability of the document. When the source advises that it is seeking a restraining order or other court action to prevent release, release will normally not be made pending the outcome of the court action."