[S. F. No. 14063. In Bank.—December 30, 1930.]

SOL SIEBENHAUER, Appellant, v. BANK OF CALIFORNIA NATIONAL ASSOCIATION et al., Respondents.

S. Laz. Lansburgh and S. Joseph Theisen for Appellant.

Redman, Alexander & Bacon and H. O. Mundhenk for Respondents.

PRESTON, J.—The complaint alleges conversion of a security denominated a Spring Valley bond in the principal sum of one thousand dollars. Defendant answered with a general denial. The court made findings and gave judgment in its favor. Plaintiff has appealed upon the judgment-roll. The facts are not in dispute.

The case turns upon the question of whether the bond in suit is or is not a negotiable instrument within the meaning of the law-merchant as disclosed by our negotiable instruments statute and supplementary enactments. The facts necessary to grasp the questions involved will now be set forth:

Plaintiff owned said bond in December, 1925, and kept it in a safe deposit box in a bank at Burlingame, California, to which box he allowed one Hirschman, with the bank's consent, to have access and to keep therein his own valuable papers. Hirschman, however, without the authority, consent or knowledge of plaintiff, extracted said bond from said box and sold it. In other words, he purloined the bond. After several transfers it was finally purchased by defendant on January 5, 1926, in good faith and for full value at a time when neither the bond itself nor any coupon thereon had matured.

It will be seen at once that unless the bond is a negotiable instrument, Hirschman could, by transfer and delivery,

convey no greater title than he himself had. ▮ The general rule is that the seller of property can transfer to the buyer no better title than he has himself and if at the time of the transfer he has no title, the purchaser, although buying in good faith and for full value obtains no title. (*Popp* v. *Exchange Bank*, 189 Cal. 296 [208 Pac. 113]; *Crocker Bank* v. *Byrne & McDonnell*, 178 Cal. 329, 332 [173 Pac. 752].) But if the instrument is negotiable within the meaning of the law-merchant, such a purchaser is protected.

In this connection certain provisions of the bond and the trust indenture securing it should be noted. The bond was one of an authorized issue of twenty-two million dollars, bearing date of May 1, 1923, due in twenty years and issued by the Spring Valley Water Company, the first interest coupon maturing May 1, 1926; it was negotiated September 27, 1923. It undertakes to "pay to the bearer hereof, or to the registered owner hereof if this bond be registered, or to the trustee under the trust indenture hereinafter mentioned, one thousand dollars . . . '', and with further reference to the trust indenture, it recites that it is secured "by a trust indenture of even date herewith executed and delivered by the company to Union Trust Company of San Francisco . . . as trustee of the trusts therein declared . . . '', and reference is made to the trust indenture for a description of the property conveyed and mortgaged, for the nature and extent of the security, the rights and holders of said bonds thereunder and the terms and conditions upon which said bonds are issued and secured.

The trust indenture itself recites: " . . . in the event the City and County of San Francisco should become the purchaser of all or substantially all of the property conveyed by said trust indenture and assume the payment of the said bond, the company should be released from all liability thereafter to accrue thereon; that in case the company should make default in any of its covenants and conditions prescribed in said bond or in said trust indenture, then the trustee may and upon the written request of the holders of 25 per cent in aggregate principal amount of all bonds then outstanding shall declare the principal of and accrued interest upon said bonds to be due and payable immediately, and upon such declaration the same should become and be

immediately due and payable, provided, that if all arrears of interest upon said bonds and the expenses and charges of the trustee shall be paid by the company and default in the observance or performance of said bonds and said trust indenture shall have been made good, the holders of a majority in principal amount of the bonds outstanding could waive such default and obtain from the trustee a rescission of such declaration of maturity, also that in case the company should make default in any of the respects aforesaid the trustee should be entitled to sell the trust estate and apply the proceeds in the manner provided in said trust indenture, also that no holder of any bond should have the right to institute any suit, action or proceedings upon or in respect to said trust indenture or have any other remedy thereunder or thereupon or under or upon said bond unless the holder shall have previously given the trustee written notice of an existing default, nor unless also the holders of at least 25 per cent in aggregate principal amount of all bonds then outstanding shall have requested the trustee in writing to take action in respect of such default and the trustee shall have declined to take such action or shall have failed so to do within thirty days thereafter."

 Appellant contends that the negotiability of said instrument is destroyed by reason of the several above noted provisions of said bond and said trust indenture. Respondent replies that its negotiability is made conclusive by reason of the provisions of the act of 1921 (Stats. 1921, p. 471), as follows: "Bonds payable to bearer or holder shall be negotiable, notwithstanding any condition contained therein or in the mortgage, deed of trust or other instrument securing the same."

We think that the instrument, whatever its proper name, is embraced within the provisions of section 3265 of the Civil Code and under the test there set forth is a negotiable instrument. This section in its original form was a part of the Uniform Negotiable Instruments Law adopted in California in 1917 (Stats. 1917, p. 1532). In 1923, however (Stats. 1923, p. 193), and subsequent to the 1921 legislation, this section was amended to read as follows: "A negotiable promissory note within the meaning of this title is an unconditional promise in writing made by one person to an-

other, signed by the maker, engaging to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer but the negotiability of a promissory note otherwise negotiable in form, secured by a mortgage or deed of trust upon real or personal property shall not be affected or abridged by reason of a statement therein that it is so secured, nor by reason of the fact that said instrument is so secured nor by any condition contained in the mortgage or deed of trust securing the same. . . . ''

The instrument in suit on its face is an unconditional promise to pay, signed by the maker, engaging to pay at a fixed future time to bearer, a sum of money. In other words, it is negotiable in form (sec. 3082, Civ. Code).

The conditions complained of are not in the instrument itself, but in the trust indenture securing it. But the above section plainly provides that where the instrument on its face is negotiable, such negotiability is not destroyed by ''any condition contained in the mortgage or deed of trust securing the same''. We know of no reason upon which to question the efficacy of this amendment to the statute. Moreover, the instrument itself declares its negotiability. The effect of the provision allowing registration is not involved, as the instrument here in question was not registered.

The judgment is affirmed.

Curtis, J., Richards, J., Seawell, J., Shenk, J., Langdon, J., and Waste, C. J., concurred.