In re HACKETT, HOFF & THIERMANN, Inc.

KALT–ZIMMERS MFG. CO. v. MARINE NAT. EXCHANGE BANK et al.

District Court, E. D. Wisconsin.
June 15, 1933.

Fish, Marshutz & Hoffman, of Milwaukee, Wis., for Kalt-Zimmers Mfg. Co.

Kaumheimer & Kaumheimer, of Milwaukee, Wis., for Marine Nat. Bank.

Geo. A. Affeldt, of Milwaukee, Wis., for West Side Bank.

GEIGER, District Judge.

The two banks, Marine National Exchange Bank and West Side Bank, are in possession of bonds pledged to them respectively by the bankrupt to secure personal loans. The question at issue is the right of the banks to hold them by virtue of the pledge.

Apparently, the petitioning banks assume that if the bonds are negotiable the question tendered by Kalt-Zimmers Manufacturing Company must be answered in the negative.

My consideration of the matter leads me to reject the conclusion, even if the assumption be granted. By that is meant that even if the bonds be negotiable in form and in fact, it does not follow that the bankrupt, *because of that fact alone,* could validly negotiate them in any and in every way. Plainly, inquiry respecting the bankrupt's real relationship to such bonds—known to or knowable by a transferee—cannot be foreclosed by the mere fact of their general negotiable character, even if there be added general good faith, value given on transfer, and claimed ordinary course attending the transfer. Therefore, it has seemed to me that proof of some kind bearing upon the bankrupt's real relationship thereto, as affecting claimed rightful negotiation, was receivable to consider and determine the latter as a basic inquiry. Whether we term the relationship as a real estate mortgage trust, or something else, and include the somewhat general and at times vague idea of "underwriting," we recur to the necessity of inquiry respecting the bankrupt's

relation to these bonds; and, if found to be fiduciary, whether knowledge thereof is chargeable to the petitioning bankers. This basic inquiry must start with an examination of the bonds and their securing mortgage. It may be conceded that upon such examination there is disclosed a power of the bankrupt trustee to "negotiate" and "sell" the bonds for some purpose. It may be particularly further conceded that if the bankrupt either owned the bonds in its individual right, or, if not, it could *sell* them in its capacity as trustee pursuant to power granted. In either event, *purchase* could be made without peril. The fact of ownership, whether it be known or unknown to the purchaser, would control in the one, as would the undoubted trust power to *sell* in the other. The purchaser would be protected. The trust power for that purpose being adequately granted alone suffices for purposes of sale.

Therefore the inquiry may assume this form: Do the bonds and their securing mortgage—including also the underwriting agreement—on their face disclose a limitation on power of disposition of such bonds? This, it may be true, is merely another form of stating our earlier inquiry respecting the bankrupt's relationship. It would seem manifest that when bonds which are held, that is, in the possession of one seeking to dispose of them, refer to the latter as a "trustee" under a "mortgage or deed of trust" to which deed "reference is hereby made with the same effect as though recited at length herein" for (1) the description of the property mortgaged, (2) the nature and extent of the security, (3) the rights of the *holders* of the bonds, and (4) the "terms and conditions upon which the said bonds are *issued, held* and secured," the purpose of the recital and reference is entirely clear. As was suggested upon oral argument, the tender of such a bond by its holder or bearer, to any one, hardly left the latter in a position to refuse to see what was on its face, or to fail or refuse to inquire what it all meant with respect to issuance, holding, or security; or with respect to the power to negotiate or sell. In the case before us, the emphasis arises out of the fact that, upon such face of the bond (and its reference), the herein bankrupt trustee is

shown to have other than a mere individual relationship. I believe that the duty was cast upon the one to whom they were tendered, no matter how clearly their negotiability in case of attempted transfer in execution of a fiduciary power, or negotiation by sale in case of individual ownership, may otherwise appear from the instrument; that is to say, the fact of negotiability within limited range is not the sole determiner of a right of a trustee to transfer property once it appears clearly that an individual and not a trust purpose is sought to be carried out. Therefore, conceding that if the bonds had a trust status they could be *sold* in execution of trust powers, they are still left outside of the trust or any of its powers when it appears there is a *non-trust* purpose to "negotiate"; that is, a pledge for the person of the trustee. The infirmity of the banks' position arises out of their knowledge that the bankrupt *trustee* was tendering the bonds for its *personal* benefit. In my judgment such infirmity is declared upon principle of trust powers—or as Justice Story put it, in the "stubborn rule of equity" forbidding trustees (and all who know of the trust) from dealing in trust property for the personal benefit of the former. And I do not believe the Negotiable Instruments Law, nor the uniform acts passed by the states, override or impair that principle. The case of Pollard v. Tobin, 211 Wis. 405, 247 N. W. 453, decided by the Supreme Court of Wisconsin, does not, and in my judgment cannot, preclude the application and enforcement of such principle in the federal courts. The infirmity here is not met by the circumstance that the bonds are payable to "bearer"; but as I conceive, it is created by the facts known to the transferee (1) that the bankrupt was a "bearer," in trust, and (2) transferred, by way of *pledge* for his personal benefit in defiance of the trust. Those facts, within the principle of equity relied upon, preclude the right of transferees to assert that they chose to ignore them or that they ignored them *in good faith,* or for *value,* or in *due course.* And with great respect, I cannot accept the decision in the Pollard Case as justifying the transfers here challenged.

An order may be entered reversing the decision of the referee.