MARINE NATIONAL EXCHANGE BANK OF MIL-
WAUKEE et al. v. KALT-ZIMMERS MANUFAC-
TURING CO. et al.

No. 148. Argued November 14, 15, 1934.—Decided December 10, 1934.

*Messrs. Leon E. Kaumheimer* and *George A. Affeldt,* with whom *Messrs. George D. Van Dyke* and *Douglass Van Dyke* were on the brief, for petitioners.

*Mr. Irving A. Fish* for respondents.

360

Mr. Justice Cardozo delivered the opinion of the Court.

In bankruptcy proceedings pending in Wisconsin, the petitioners, two Milwaukee banks, prayed an order of the court for permission to sell collateral securities pledged by the bankrupt. The subject of the pledge was bonds payable to bearer, secured by a deed of trust. The District Court refused the relief (6 F. Supp. 638), and the Court of Appeals for the Seventh Circuit affirmed. 70 F. (2d) 815. Two questions are in the case, first, whether the bonds are negotiable in form, and, second, whether the petitioners are holders in good faith. We granted certiorari.

On October 9, 1929, Kalt-Zimmers Manufacturing Company of Milwaukee, Wisconsin, made its deed of trust to Hackett, Hoff and Thiermann, Incorporated, trustee, to secure bonds of the total amount of $115,000. The bonds are payable to bearer. They are stated to be secured by a deed of trust to the above named trustee, " to which deed of trust reference is hereby made with the same effect as though recited at length herein, for the description of the property mortgaged, the nature and extent of the security, the rights of the holders of the bonds, and the terms and conditions upon which the said bonds are issued, held and secured, and may, before their fixed maturities, be declared at once due and payable, and the manner of prepayment before maturity." They are to pass by delivery, but they are not to be valid for any purpose or be secured by the deed of trust until certified by the trustee to be bonds covered by the mortgage.

The deed of trust thus referred to states the duty of the trustee in the disposition of the bonds and the application of the proceeds. The directions are precise and full. As soon as practicable after certifying the bonds the trustee is to negotiate and sell them. The proceeds are to be used, first, for the discharge of an underlying mortgage of $35,000 on real estate in Milwuakee belonging to the mort-

gagor; second, to pay the cost of a building then about to be constructed; " the balance," if any, " to be at the disposal of the party of the first part," the maker of the deed. " The trustee, or any of its officers, agents or stockholders may acquire, own and deal in said bonds and coupons with the same rights as if not trustee hereunder and shall not be obliged to account to any one for any profits made thereby."

Hackett, Hoff and Thiermann, the trustee, did not dispose of the bonds .in controversy in accordance with the deed of trust. Instead it pledged them with the petitioners ($6000 of bonds with the Marine Bank and $8,500 with the West Side Bank) as security for its own indebtedness, receiving back in some instances additional loans and in other instances securities of equal value previously pledged. On June 8, 1931, the trustee was adjudicated a bankrupt, whereupon the banks petitioned for authority to sell the bonds in their possession. The courts below have ruled that upon the face of the bonds the bankrupt held them not in its own right, but as trustee for the mortgagor or others, and that by reason of this disclosure the pledgees had been put upon inquiry and were chargeable with constructive notice of the provisions of the trust. All the transactions took place in Wisconsin, where the law of negotiable instruments is governed by statute. Wisconsin Statutes, 1929, § 116.01 *et seq.*

*First:* Under the Wisconsin statute, as construed by the highest court of that state, the bonds are negotiable.

Section 116.02 Wisconsin Statutes, 1929, provides as follows:

"An instrument to be negotiable must conform to the following requirements:

(1) It must be in writing and signed by the maker or drawer.

(2) Must contain an unconditional promise or order to pay a sum certain in money.

(3) Must be payable on demand or at a fixed or determinable future time.

(4) Must be payable to order or to bearer.

(5) Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty." [1]

The bonds in controversy are payable to bearer. They are obviously negotiable, unless the reference, already quoted, to the terms of the deed of trust makes the promise of payment conditional. An identical provision was considered by the Supreme Court of Wisconsin in *Pollard* v. *Tobin,* 211 Wis. 405; 247 N. W. 453. The ruling of the court was that negotiability was not impaired. Cf. *Enoch* v. *Brandon,* 249 N. Y. 263; 164 N. E. 45; *Siebenhauer* v. *Bank of California,* 211 Cal. 239; 294 Pac. 1062; *Pflueger* v. *Broadway Trust & Savings Bank,* 351 Ill. 170; 184 N. E. 318; *Paepcke* v. *Paine,* 253 Mich. 636; 235 N. W. 871; *Merchants National Bank* v. *Detroit Trust Co.,* 258 Mich. 526; 242 N. W. 739; *Bank of California* v. *National City Co.,* 138 Wash. 517; 244 Pac. 690. This construction of a Wisconsin statute is binding upon the national courts, though the statute may have been intended to be declaratory of the rule at common law. *Burns Mortgage Co.* v. *Fried,* 292 U. S. 487.

*Second:* The bonds being negotiable, the petitioners under the Wisconsin law have the privileges accorded to holders in good faith.

Section 116.61, Wisconsin Statutes, 1929, provides as follows:

"*Actual knowledge of infirmity necessary to notice.* To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual

---

[1] As to the meaning of the words " determinable future time," see Wisconsin Statutes, 1929, § 116.08.

knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The effect of this section was considered in *Pollard* v. *Tobin, supra.* There the same bankrupt, Hackett, Hoff and Thiermann, Incorporated, was trustee under another deed of trust, made by one Tobin. The bonds had the same provisions contained in the bonds in suit. There, as here, the bankrupt pledged the bonds with a bank as security for loans. The court held that the bank was a holder in due course. It was a holder for value, for it had given up other collateral upon the pledge of the new security (citing *American Savings Bank & Trust Co.* v. *Helgesen,* 64 Wash. 54; 116 Pac. 837). It was a holder in good faith, for there was "no evidence of actual knowledge on the part of the bank of any infirmity in the bonds or any defect in the Hackett Corporation's title to them" (citing § 116.61, Negotiable Instruments Law of Wisconsin).

We interpret that decision as a ruling that under the Wisconsin statute notice of facts tending to put a cautious buyer upon inquiry will not defeat the title of a holder of negotiable paper, if in truth there was neither actual knowledge of an infirmity nor conscious joinder in a fraud. Cf. *Murray* v. *Lardner,* 2 Wall. 110, 121; *Swift* v. *Smith,* 102 U. S. 442, 444; *Crittenden* v. *Widrevitz,* 272 Fed. 871, 873; *Cheever* v. *Pittsburgh, S. & L. E. R. Co.,* 150 N. Y. 59, 65, 66; 44 N. E. 701; *Nickey Bros.* v. *Lonsdale Mfg. Co.,* 149 Tenn. 1; 257 S. W. 403.[2] As applied to the case at hand, the reasoning, it seems, is this: A trustee under a mortgage may or may not be a trustee of bonds payable to bearer, accompanying the mortgage. The existence of the one trust does not lead as a necessary inference to the

---

[2] The cases are assembled in Brannon's Negotiable Instruments Law, 4th edition by Chafee, § 56, p. 444 *et seq.*

existence of the other. If title or possession as a fiduciary is not apparent from the bonds themselves or is not otherwise made known, there is no duty resting upon the buyer to examine the deed of trust, or explore other avenues of inquiry, to discover the concealed relation. We are not required for present purposes to approve this doctrine or disapprove it. Enough that we accept it as the law of the Wisconsin court. Whether the same result will follow if a pledgee, making a loan upon bonds for the private use of the pledgor, is aware that a trust has been attached to what is taken as security, we do not now consider. There are decisions at common law that acceptance of a pledge upon such terms amounts to bad faith or to evidence thereof, or even to actual knowledge of an infirmity of title. Cf. *Duncan* v. *Jaudon,* 15 Wall. 165; *Manhattan Bank* v. *Walker,* 130 U. S. 267, 278; *Smith* v. *Ayer,* 101 U. S. 320, 328; *Ward* v. *City Trust Co.,* 192 N. Y. 61, 69, 70; 84 N. E. 585; *Newburyport* v. *Fidelity Mutual Life Ins. Co.,* 197 Mass. 596; 84 N. E. 111; *Empire Trust Co.* v. *Cahan,* 274 U. S. 473.[3] We do not understand that any ruling yet made as to the effect of the Wisconsin statute extends to such a state of facts. *Pollard* v. *Tobin,* as we read it, is authority for this: that a bond payable to bearer is not sullied upon its face because tendered by a holder who is known to be a trustee under the mortgage and to have certified the issue. From that knowledge without more, a buyer in Wisconsin is not chargeable with actual notice that the title of the seller is subject to a trust, or with a fraudulent participation in the abuse of a trust relation.

What we have written as to the meaning of *Pollard* v. *Tobin* is not at variance with the construction given to that judgment in the opinion of the court below. Referring to the Wisconsin case, the Court of Appeals said

---

[3] The cases are brought together in Scott, Participation in a Breach of Trust, 34 Harv. L. Rev. 454, 457 *et seq.*

that it "involved the identical question now under consideration, arising out of a transaction between the same bankrupt and another bank, in which there were pledged, under similar circumstances, bonds practically identical in form and terms with the bonds herein involved." 70 F. (2d) at 817. With this concession there was none the less a refusal to follow the Wisconsin rule, the court expressing the opinion that the rule had its origin in the misconstruction of a declaratory statute. "The federal courts are not bound," it was said, "by a decision of a state court in the interpretation or application of a provision of a uniform law contrary to the weight of authority as established by decisions of other states." 70 F. (2d) at 818. By our judgment in *Burns Mortgage Co.* v. *Fried, supra,* a case decided shortly after the decision of this case below, the law is settled to the contrary.

The point is made for the respondent that adherence is not owing to *Pollard* v. *Tobin,* for the reason that at the date of the transactions in controversy the meaning of the Wisconsin statute was still undetermined. *Kuhn* v. *Fairmont Coal Co.,* 215 U. S. 349, is cited in support of that contention. What was involved in that case was the application of a local decision affecting interests in real estate that were untouched by any statute. The opinion of the court (p. 369) does not deny (citing *Brine* v. *Insurance Co.,* 96 U. S. 627, 636), that the conclusion would have been different if the contested interests had been dependent upon a statute preceding their creation, though not construed till afterwards. In that event the later construction would have been read into the act as if there from the beginning. *Chicago, M., St. P. & P. R. Co.* v. *Risty,* 276 U. S. 567, 570; *Sioux County* v. *National Surety Co.,* 276 U. S. 238, 240; *Hawks* v. *Hamill,* 288 U. S. 52, 58. Cf. *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358.

The Negotiable Instruments Law of Wisconsin was part of the law of that state when the bonds in controversy were pledged. This being so, the decision in *Pollard* v. *Tobin* supplies the governing rule irrespective of the date when the decision was announced. In that view, *Kuhn* v. *Fairmont Coal Co.* is seen to be irrelevant. There is no occasion in such circumstances to mark its limits more precisely. *Hawks* v. *Hamill, supra.*

The decree is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*