# Wytheville

## Sarah E. Sawyer v. National Bank of Commerce of Norfolk, Virginia.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*James G. Martin & Son,* for the plaintiff in error.

*Hugh W. Davis* and *William L. Parker,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Sarah E. Sawyer instituted this action against the National Bank of Commerce of Norfolk, Virginia, to recover $1,500 with interest from June 23, 1931, the value of three negotiable notes executed by George G. Carr, payable to bearer, which she alleged had been illegally and wrongfully acquired by the bank. The jury returned a verdict for plaintiff. On motion of defendant the trial court set aside the verdict, and entered judgment for defendant. By this writ of error plaintiff seeks to have the judgment for defendant reversed, and a judgment in her behalf entered on the verdict of the jury.

It is conceded that Mrs. Sawyer delivered $1,500 to L. P. Matthews, with directions to lend the money to George G. Carr, and that Carr executed three notes totaling $1,500 and a deed of trust conveying certain realty in Norfolk, Virginia, to L. P. Matthews, trustee, to secure the payment of this sum. At the time Matthews transferred the notes to the National Bank of Commerce, they were the

property of Mrs. Sawyer; he had no interest therein or title thereto.

The case was submitted to the jury on one instruction, reading: "The court instructs the jury that if they believe from the evidence that L. P. Matthews was not in fact the true owner of the notes signed by Mr. Carr which L. P. Matthews transferred to the defendant bank, the burden of evidence is upon the bank to prove by a preponderance of the evidence that it purchased those notes from Matthews without notice."

The only question presented is whether the evidence is sufficient to sustain the verdict for plaintiff.

Plaintiff contends, and we think correctly, that the statements on the face of the notes, considered in the light of the circumstances under which the bank acquired them, were sufficient to submit to a jury the question of notice to the bank of want of title in Matthews. Or stating the question another way, the statements on the face of the notes, plus other facts and circumstances known to the bank, were such that fair-minded men might have inferred bad faith on the part of the bank in acquiring the notes.

On April 20, 1932, before any of Carr's notes matured, Matthews offered them to the bank in exchange for a $1,000 note, secured by a mortgage on realty in Asheville, N. C., which Matthews had previously transferred to the bank as collateral security for the payment of his personal debt to the bank, evidenced by a note for $736.09. Mr. Alfriend, the cashier of the bank, by an inspection of the property described in the deed of trust, reached the conclusion that the payment of the $1,500 was well secured. He then, after a careful examination of the notes and the deed of trust, made the exchange of securities.

As heretofore stated, each of the Carr notes was payable to bearer, and above the signature of the maker contained the following statement: "This note is secured by

a deed of trust of even date herewith, made by the maker hereof unto *L. P. Matthews* as trustee (who countersigns this note to identify it as the note described in said deed of trust), and intended to be recorded forthwith, to which deed of trust reference is hereby made for the terms thereof."

On the margin of each note, the trustee's signature appeared under the following notation: "I HEREBY CERTIFY, that this note is the note described in the deed of trust mentioned in this note on 362 Hamilton avenue, Norfolk, Virginia.

"(Signed) L. P. MATTHEWS, Trustee." .

The bank then had actual knowledge of the fact that Matthews was the trustee in the deed of trust securing the payment of the Carr notes, and that a beneficiary cannot act as trustee in a deed of trust securing the payment of an obligation held by him. The notes on their face showed that before they were completed it was necessary for them to have been in Matthews' possession, in his representative capacity. While these statements on the notes are not sufficient in themselves to charge the existence of bad faith on the part of the bank, they certainly are sufficient to arouse suspicion of possible, or potential equities of other parties. Suspicion, however, is not enough. We held in *Moore* v. *Potomac Savings Bank,* 160 Va. 597, 607, 608, 169 S. E. 922, 925, 91 A. L. R. 1133, that: "The test in Virginia, and in the majority of the States, is not whether the plaintiff was negligent in acquiring the notes, but whether or not he acted in good faith. If the facts and circumstances of the transaction are such that bad faith may be inferred, it then becomes a question for the jury.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice

of the defect in title or bad faith on his part evidenced by circumstances."

Section 56 of the N. I. L. (Code 1919, section 5618) makes a distinction between constructive notice, as applied in other branches of the law (particularly in equity jurisprudence) and as applied under the Law Merchant. In the former, "The care which a person of ordinary honesty and prudence would have exercised is the test." Under the Law Merchant the question is "not ought the holder to have suspected, but did he suspect the existence of the equity." Bigelow on Bills, Notes, and Checks (3d Ed.) sections 472, 473.

The bank, by this exchange, surrendered one $1,000 note for three notes well worth $1,500, thereby increasing their securities against Matthews to the extent of $500. It appears in the record that Matthews paid the note for $736.09, but the bank refused to surrender these securities because Matthews was indebted to the bank on other obligations in excess of $4,500. By the terms of the note which Matthews had signed, the bank was authorized to hold as security any and all property of the maker in its possession, and apply the same, or the proceeds therefrom, to the payment of any obligation due the bank. It was by virtue of this authority that the bank claimed the right to collect the Carr notes, and apply the proceeds on the indebtedness due it by Matthews.

In *Moore* v. *Potomac Savings Bank, supra,* we said: "It is generally recognized that negotiable paper may be offered for sale at such a grossly inadequate price as to charge the purchaser with notice of equities existing between prior parties, and when paper is so acquired the purchaser is guilty of bad faith, which will defeat recovery." See note in 91 A. L. R. 1139; 3 R. C. L. 1055, 1079; 8 C. J. 508.

At the time the bank acquired these notes, it knew that Matthews was unable to meet his financial obligations. He was $1,500 in arrears for office rent due the bank. Furthermore the bank knew Matthews was the

son-in-law of Mrs. Sawyer; that he habitually lent money for her, as well as money belonging to other clients, on real estate in Norfolk and vicinity; and that in the deeds of trust securing these loans he made himself trustee. Notwithstanding knowledge of these facts the bank made no inquiry of Matthews, or anyone else, as to the ownership of these notes when it acquired them.

"The true principle is that circumstances may be so strong and decisive that to ignore them would be not mere negligence, or gross negligence, but of itself an act of bad faith. * * * In most of the cases these disclosures have been supplemented by proof of other circumstances *dehors* the instrument itself. So that after all, the statute has not wholly eliminated the duty of inquiry; and something of the doctrine of constructive notice still survives." Bigelow on Bills, Notes, and Checks, section 476.

Defendant relies on *Marine National Exchange Bank* v. *Kalt-Zimmers Mfg. Co.* (U. S. Supreme Court, Dec. 10, 1934) 293 U. S. 357, 55 S. Ct. 226, 228, 79 L. Ed. 427. In that case the court held that the former decisions of the Wisconsin court were controlling. In concluding the opinion this was said: "As applied to the case at hand, the reasoning, it seems, is this: A trustee under a mortgage may or may not be a trustee of bonds payable to bearer, accompanying the mortgage. The existence of the one trust does not lead as a necessary inference to the existence of the other. If title or possession as a fiduciary is not apparent from the bonds themselves or is not otherwise made known, there is no duty resting upon the buyer to examine the deed of trust, or explore other avenues of inquiry, to discover the concealed relation. We are not required for present purposes to approve this doctrine or disapprove it."

The extent of the holding in this case is that in Wisconsin, the mere fact that it appears from the face of the note that the transferor is the trustee in the deed of trust securing its payment, is not itself sufficient to charge the transferee with notice of outstanding equities.

In the case at bar not only did the notes show on their face that Matthews was trustee in the deed of trust securing their payment, but the transferee knew the facts and circumstances heretofore stated, which made the question of notice to the bank a question to be determined by the jury.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury reinstated, and judgment thereon here entered for plaintiff.

*Reversed and final judgment.*