## GLOVER v. STATE BANK OF BIRDS, ILL.
### No. 6358.

Circuit Court of Appeals, Seventh Circuit.
Feb. 28, 1938.

Frederic A. Fischel, of Chicago, Ill., B. O. Sumner, and Philip Lewis, both of Lawrenceville, Ill., for appellee.

Walter T. Gunn, of Danville, Ill., and George W. Lackey, of Lawrenceville, Ill., for appellant.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This is a suit brought by the receiver of the First National Bank of Lawrenceville, Ill., against the State Bank of Birds, Birds, Ill., for a demand alleged to be due from the latter as the indorser of certain tax warrants sold by the latter to the First National Bank of Lawrenceville prior to the appointment of a receiver.

The case was tried by the court upon a stipulation of facts. The original case was filed on August 1, 1933, against the commissioner of highways of the town of Bond, county of Lawrence in the state of Illinois. The petition of the State Bank of Birds to be permitted to intervene as a party defendant was denied; but later the bank was made a party defendant, and Karl A. Glover became the plaintiff receiver as successor to J. B. Neid. On motion to dismiss filed by defendant the District Court dismissed the action as to the commissioner of highways of the town of Bond on the ground that a tax warrant does not constitute an obligation between the taxing body and the holder.

It appears from the stipulation of facts that in 1929 the commissioner of highways of the town of Bond issued and sold to the State Bank of Birds two tax warrants, one in the sum of $3,500, drawn against the regular road and bridge fund, and one for $3,000 drawn against the hard road fund of the town of Bond. On November

18, 1929, the State Bank of Birds sold these warrants to the First National Bank of Lawrenceville and in payment therefor received credit on the books of the First National Bank in the sum of $6,500. The warrant drawn against the road and bridge fund for $3,500 was renewed in the sum of $3,000 and the warrant for $3,000 drawn against the hard road fund was renewed in the sum of $2,500; and on the 7th day of November, 1931, the State Bank of Birds sold these renewal warrants to the First National Bank of Lawrenceville for the sum of $5,500; and on the same date the account of the State Bank of Birds in the First National Bank of Lawrenceville was charged with the sum of $6,949, the total amount of the original warrants, dated November 18, 1929, with interest, and these warrants were surrendered by the First National Bank of Lawrenceville to the State Bank of Birds.[1] The renewal warrants in the sums of $3,000 and $2,500, respectively, are involved in this suit.

Upon the trial of the case the court found in favor of the receiver of the First National Bank of Lawrenceville, and, after allowing to the State Bank of Birds its offset for a balance standing to its credit on the books of the National Bank, together with interest thereon, entered judgment in favor of the plaintiff for the sum of $4,677.08. From this judgment, the defendant appeals.

Defendant relies primarily upon the following propositions:

1. The tax warrants were nonnegotiable instruments.

2. Under the Illinois rule there is no guarantee of payment by the indorser of tax warrants or other nonnegotiable instruments.

3. In cases involving liability of indorsers of nonnegotiable instruments the federal courts have followed the rule adopted by the state courts in the state in which the transaction arose.

Plaintiff urges that under the doctrine of Swift v. Tyson[2] the District Court is free to decide this cause on the basis of the general commercial law prevailing in the United States; and further urges that the majority, and the sounder rule, prevailing in the United States holds the indorser of a nonnegotiable instrument liable upon his indorsement, and that such rule should govern the liability of an indorser of a tax warrant such as the one involved in this suit.

In support of the proposition that the federal courts have followed the rule of law of the state in which the transaction arose for the purpose of determining the legal effect of an indorsement of a nonnegotiable instrument, defendant cites and relies upon several cases which were decided prior to the decision of the United States Supreme Court in the case of Swift v. Tyson, supra. We think that these early decisions fairly support the contention of defendant. But in so far as these earlier decisions are restricted, or overruled, by Swift v. Tyson and later decisions of the Supreme Court of the United States, they are no longer authority.

In the case of Brooklyn City & Newton Railroad Company v. National Bank[3] the Supreme Court of the United States was confronted with the necessity of choosing between the rule of law followed by the

[1] The form of the renewal warrants and the indorsements thereon are as follows:
"Order No. ——        Nov. 4, 1931.
$2500.00. Fund: H. R. % Acct.
To the Treasurer, Town of Bond, Lawrence County, Illinois:
Pay to the Order of State Bank of Birds, the sum of Twenty-five Hundred ........................... Dollars.
For: Renewal loan at rate of 7%.
Road: Hard Road a/c
This order is payable at the State Bank of Birds, Illinois.
         Signature: FRED STEVENSON,
                         Commissioner."
Indorsement: "Pay to the Order of First National Bank of Lawrenceville, Lawrenceville, Illinois. State Bank of Birds, Birds, Illinois. L. E. Osborn, Cashier."

"Order No. —— November 4, 1931
                         $3000.00
Fund: R. & B.
To the Treasurer, Town of Bond, Lawrence County, Illinois:
Pay to the Order of State Bank of Birds, The sum of Three Thousand ........................... Dollars.
For: Renewal loan at rate of 7%.
Road: R. & B. a/c
This order is payable at the State Bank of Birds, Birds, Illinois.
         Signature: FRED STEVENSON,
                         Commissioner."
Indorsement: "Pay to the order of First National Bank of Lawrenceville, Ill. State Bank of Birds, Birds, Illinois. L. E. Osborn, Cashier."
[2] 16 Pet. 1, 18, 10 L.Ed. 865.
[3] 102 U.S. 14, 32, 26 L.Ed. 61.

state courts of New York and the rule which the Supreme Court of the United States thought to be the correct rule. The New York rule was that the holder of negotiable paper, transferred merely as collateral security for an antecedent debt, was not a holder for value within those rules of commercial law which protected such paper against the equities of prior parties. The Supreme Court concluded that the question was one of general commercial law and that the decisions of the state courts were not binding upon federal courts. The opinion of the court notes the distinction between decisions of state courts which are in exposition of legislative enactments of the state, and those decisions wherein the state courts are called upon to construe ordinary contracts or other written instruments or to decide questions of general commercial law, when the state tribunal is performing the same function as a federal tribunal, "that is, to ascertain, upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case."[4] And the opinion specially emphasized the foregoing point in the following statement: "The decisions of the New York court, which we are asked to follow in determining the rights of parties under a contract there made, are not in exposition of any legislative enactment of that State. They express the opinion of that court, not as to the rights of parties under any law local to that State, but as to their rights under the general commercial law existing throughout the Union, except where it may have been modified or changed by some local statute. It is a law not peculiar to one State, or dependent upon local authority, but one arising out of the usages of the commercial world."

Prior to the decision of the Supreme Court of the United States in the case of Burns Mortgage Co. v. Fried[5] the decisions of the lower federal courts had been in conflict on the question of whether federal courts must follow the state court's construction of the Uniform Negotiable Instruments Law. Some of the lower courts had recognized a distinction between a legislative act which altered the common law and one which purported to codify or declare it. In the Burns Case the Supreme Court held that a state court's construction of the provisions of the Uniform Negotiable Instruments Law, as adopted by the state's Legislature, was binding upon federal courts.[6]

In a later decision in the case of Marine National Exchange Bank of Milwaukee v. Kalt-Zimmers Manufacturing Co.[7] the Supreme Court followed the rule as announced in the Burns Case, and held that a construction which the Supreme Court of Wisconsin had placed upon certain sections of the Uniform Negotiable Instruments Act of Wisconsin, St.Wis.1929, § 116.01 et seq., was binding upon the federal courts.

It is true, as suggested by defendant, that the Supreme Court of Illinois has declared that tax warrants, such as the ones in suit, are nonnegotiable; and that this decision is based upon the court's construction of the Illinois statute. But it is not contended that there is any legislative rule in Illinois which governs the liability of indorsers of nonnegotiable instruments. Consequently, if it can be said that the

---

4 Swift v. Tyson, supra.

5 292 U.S. 487, 54 S.Ct. 813, 78 L.Ed. 1380, 92 A.L.R. 1193.

6 "We think the better view is that there is no valid distinction in this respect between an act which alters the common law and one which codifies or declares it. Both are within the letter of section 34 of the Judiciary Act (supra). And a declaratory act is no less an expression of the legislative will because the rule it prescribes is the same as that announced in prior decisions of the courts of the state. Nor is there a difference in this respect between a statute prescribing rules of commercial law and one concerned with some other subject of narrower scope. The contention of the respondent that this court announced a contrary view in Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, is not sustained by a careful reading of the opinion in that case. We are referred to certain expressions found in Watson v. Tarpley, 18 How. 517, at page 521, 15 L.Ed. 509. What was there said, on the subject was unnecessary to the decision, and has not been followed in later cases. The Florida Negotiable Instruments Law, as construed by the Supreme Court of the state, furnishes the rule of decision by which the negotiable character of the notes is to be determined." Burns Mortgage Co. v. Fried, supra, 292 U.S. 487, at page 495, 54 S.Ct. 813, 815, 78 L.Ed. 1380, 92 A.L.R. 1193.

7 293 U.S. 357, 55 S.Ct. 226, 79 L.Ed. 427.

tax warrants involved in this suit fall within the general class of nonnegotiable mercantile or commercial paper, the District Court was not bound by the decisions of the Supreme Court of Illinois respecting the liability of indorsers of nonnegotiable instruments.

■ It is well settled by the decisions of state and federal courts that "Warrants, orders, or certificates of indebtedness issued by municipal, county or other similar public corporations, although payable to order or bearer, are not negotiable in the sense of the law merchant, so as to cut off in the hands of bona fide purchasers for value, or holders in due course, defenses or equities which might have been made against them had they remained in the hands of the original holder."[8] But it seems equally well settled that such instruments, being negotiable in form, partake of the legal quality of negotiable instruments to the extent that the holder is authorized to demand payment of them and to maintain, in his own name, any appropriate action to enforce payment thereof.[9]

■ The tax warrants in question are in the form of bills of exchange drawn by the commissioner of highways of the town of Bond upon the treasurer of the town of Bond and payable to the order of the State Bank of Birds. By the terms of the tax warrants, as well as by the decisions of the Supreme Court of Illinois, there is no pledging of the general credit of the town of Bond, since the warrants are drawn against designated tax funds. Consequently, the indorsee, the First National Bank of Lawrenceville, as well as the indorser-payee, the State Bank of Birds, took the warrants subject to the conditions expressed therein. The purpose of the issuing of such interest bearing instruments obviously is to borrow money for the use of the municipal corporation in anticipation of the collection of taxes which are to constitute the source of repayment of the sums advanced, or paid, for the tax warrants. Ordinarily, the designation of a fund against which such warrants are drawn, though legally making their discharge conditional upon the existence of the fund, in fact strengthens, rather than weakens, the credit of the warrants. It is contemplated that such tax warrants will be bought and sold, and the use of the language "pay to the order of" indicates an understanding that transfers of the warrants will be effected by indorsements as in the case of negotiable instruments. And since these warrants are in the form of commercial paper and issued for the purpose of obtaining credit, and since by usage they are bought and sold, and transferred by delivery and indorsement, the same as ordinary promissory and order paper, there would seem to be no valid reason for courts to refuse to recognize that they belong to the general class of nonnegotiable commercial paper.[10]

An examination of the decisions of courts of last resort in the United States

---

[8] Annotations, 36 A.L.R. p. 949.

[9] Nashville v. Ray, 19 Wall. 468, 22 L. Ed. 164; Wall v. Monroe County, 103 U.S. 74, 26 L.Ed. 430.

[10] "Custom and usage may have so far assimilated them to regular commercial paper as to make them negotiable, that is, transferable by delivery or indorsement. This quality renders them more convenient for the purposes of the holder, and has, undoubtedly, led to the idea so frequently, but, as we think, erroneously, entertained, that they are invested with that other characteristic of commercial paper—freedom from all legal and equitable defenses in the hands of a bonâ fide holder." Nashville v. Ray, 19 Wall. 468, 478, 22 L.Ed. 164; note, 36 A.L.R. 952.

"Orders drawn by municipal officers are negotiable in the sense that they may pass by indorsement so as to vest the title in the assignee and authorize him to institute suit thereon in his own name, even though they are not negotiable to the extent of cutting off defenses which might be set up against the original payee." National Bank of Monmouth v. Shunick, 228 Ill.App. 471, at page 477.

"Where a warrant for the payment of money, regular upon its face, drawn by officers having authority to draw the same, is introduced in evidence, a valid and sufficient consideration therefor may properly be presumed, and it makes a prima facie case of liability against the body issuing it." National Bank of Monmouth v. Shunick, supra, 228 Ill.App. 471, at page 478.

"Nevertheless, in many of the States, including our own, it has become quite common in business transactions to transfer these instruments by written indorsements, in the same manner as if commercial paper, and this usage or custom prevails to such an extent that many courts of the highest respectability have recognized the validity of such assignments, for the purpose, simply, of enabling the assignee to sue in his own name, saving to the municipality all equities and defences

indicates that the weight of authority supports the rule that the indorsement of a nonnegotiable bill or note by the payee or transferee renders him liable to his indorsee, although there is sharp disagreement as to the nature and extent of the liability.[11] Some decisions have placed upon the indorser the liability resulting from the ordinary assignment of a chose in action; under other decisions the liability is that of a guarantor, and in still other decisions the indorser is held to the liability of a maker or original promisor.

The nonnegotiable instruments in the instant case were drawn payable to order, and the payee transferred them by delivery and by an indorsement "pay to the order of the First National Bank of Lawrenceville, Illinois." The indorsement is in the form regularly used for the purpose of effecting a transfer of a negotiable instrument and has a definite legal meaning when placed upon such an instrument. Since the holder of a nonnegotiable instrument can transfer his right, title, and interest in the claim represented by the instrument without using the technical indorsement "pay to order," it is reasonable to assume that when such an indorsement is used it is used for the purpose of enlarging ordinary warranty obligations of an assignor of a chose in action; and it is our opinion that such transferor, in the absence of evidence of a different intention,[12] should be held to warrant payment according to the tenor of the instrument.[13]

The Bank of Birds by its unqualified pay-to-order indorsements indicated an intention to assume the essential obligations of an indorser; and since there was no evidence to indicate a contrary intention, the trial court correctly concluded that the Bank of Birds, by its indorsements, impliedly warranted that the principal sums were due and would be paid according to the tenor of the instruments. And the sums not having been paid the trial court also correctly concluded that the defendant's liability to pay had accrued.

The defendant urges that in any event the plaintiff was not entitled to succeed in his suit without showing that due diligence had been employed to collect from the original obligor. But the record shows that the plaintiff had instituted suit against the commissioner of highways of the town of Bond and that the Bank of Birds knew of this suit and had filed a petition to be permitted to intervene as a defendant; that this petition was overruled, and that later the Bank of Birds was made a defendant; and that upon the joint motion of the commissioner of highways of the town of Bond and the Bank of Birds the suit was dismissed as to the commissioner of highways of the town of Bond. It was recited in the instruments in question that they were payable at the Bank of Birds and the stipulation of facts discloses that the Bank of Birds obtained the instruments in suit as renewals of original anticipation warrants, which had been issued in 1929, and which the Bank of Birds had transferred by indorsement to the plaintiff. In view of the complete knowledge of the Bank of Birds of the foregoing facts, including the fact of nonpayment, plaintiff was under no obligation to take any additional measures as conditions precedent to the enforcement of the liability of the defendant.

The judgment of the District Court is affirmed.

---

which would be available if the suit were brought in the name of the original payee." People ex rel. Harvey B. Hurd v. William T. Johnson, 100 Ill. 537, at page 548, 39 Am.Rep. 63.

[11] Annotation, 79 A.L.R. 723 et seq. See, also, Story, Promissory Notes, §§ 128, 129; Street, Foundations of Legal Liability, Vol. 2, p. 377; Holdsworth, The Origin and Early History of Negotiable Instruments, 31 Law Quart.Rev. 12, 173, 376, cited in A.L.R. Annotations, supra.

[12] Duchaine v. Phoenix, 100 Vt. 112, 135 A. 715; Id., 101 Vt. 308, 143 A. 301.

[13] "The liability of an indorser of a nonnegotiable instrument is direct and positive and equivalent to the execution of a new note." Berry v. Gross, 192 Iowa, 300, 184 N.W. 661, 663.