**HOME INDEMNITY CO. OF NEW YORK
v. O'BRIEN, Atty. Gen. of Michigan,
et al.**

Circuit Court of Appeals, Sixth Circuit.
June 7, 1939.

Clark C. Coulter, of Detroit, Mich. (Clark C. Coulter, of Detroit, Mich., on the brief), for appellant.

Stevens T. Mason, of Detroit, Mich., and Earl L. Burhans, of Paw Paw, Mich. (Thomas Read, Atty. Gen. of Mich., and John Panchuk, Asst. Atty. Gen. of Mich., on the brief), for appellees.

Mason, Davidson & Mansfield, of Detroit, Mich., amicus curiæ.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal by appellant, The Home Indemnity Company of New York, from a judgment of $25,000 rendered by the District Court and involves construction of the reciprocal insurance laws of New York and Michigan.

The Legislature of the State of New York, by an act of April 5, 1929, amended its compensation laws (Chapter 305, Laws of New York, 1929, Subsection 7, Section 54, Workman's Compensation Law, chapter 67, Consolidated Laws of New York). The part pertinent to this appeal is as follows:

"No policy or contract of insurance issued by a foreign stock corporation * * * authorized to transact the business of workmen's compensation insurance in this state, * * * covering or intended to cover the liability of an employer to his employees under this chapter, shall be accepted as a compliance with subdivision two of section fifty of this chapter, unless such foreign stock corporation * * * shall have filed with the superintendent of insurance a bond or undertaking with good and sufficient sureties to the people of the state of New York, and conditioned upon the payment in full of any and all compensation and benefits as provided in this chapter to any and all persons entitled thereto under any such policy or contract of insurance. * * * The amount of such bond shall be such sum as may reasonably represent twenty-five percentum of the outstanding reserves for compensation losses on policies issued by such foreign stock corporation or mutual association upon risks located in the state of New York as determined by law or by the requirements of the superintendent of insurance, provided, however, that the amount of such bond shall in no case be less than twenty-five thousand dollars nor more than one million dollars. Such bond shall be renewed annually."

The act also provided the bond was to contain a provision authorizing the Attorney General of the State, upon a certificate of the Superintendent of Insurance that there had been a default in the payment of compensation for thirty days or that the principal had become insolvent, to enforce such bond in the name of the people of the State of New York for the benefit of any

and all persons entitled to the compensation assured by any policy issued by such company or association, or otherwise entitled to any benefits under said policy.

The purpose of the law was to protect all workmen and their dependents then or thereafter entitled to compensation benefits under policies issued for such purposes in the event of the insolvency of a foreign insurance carrier (New York Legislative Document No. 87, 1928; No. 75, 1929).

Section 12260 of the Compiled Laws of Michigan for 1929, commonly called "The Reciprocal Insurance Law of the State of Michigan" and effective August 28, 1929, provides in substance that whenever, by any law in force without the State, a Michigan insurance corporation was required to make a deposit of securities for the protection of policyholders or for any other purpose, or any special burden was imposed, greater than required by the laws of the State of Michigan for similar foreign corporations or their agents, foreign insurance companies should be required, as a condition precedent to their transacting business in the state, to make a like deposit for like purposes with the State Treasurer of Michigan and to pay to the Commissioner of Insurance a rate equal to such charges and payments imposed by the laws of such other state upon similar corporations of the State of Michigan and the agents thereof. Any corporation refusing for thirty days to make such payment should have its certificate of authority revoked by the Commissioner of Insurance. Pursuant to the provisions of the above statutes, the Commissioner of Insurance for the State of Michigan required the Southern Surety Company, a New York corporation, as a condition precedent to continuing business in that State to file a bond similar to the one required by the Superintendent of Insurance of New York State as a condition precedent to foreign insurance companies doing business there, and on June 16, 1931, pursuant to this demand, the Southern Surety Company, with the appellant, The Home Indemnity Company, as surety, filed with the Commissioner of Insurance for the State of Michigan, a bond the substance of which is as follows: After reciting that it was engaged in the business of an insurance carrier of workmen's compensation as authorized and regulated by the laws of the State of Michigan and that it was required by the Superintendent of Insurance of that State

to file a bond with sureties to the people of that State conditioned upon the payment in full of any and all compensation and benefits, as provided in the Workmen's Compensation Law, to any and all persons entitled thereto under any and all contracts of insurance that it might issue, it specifically agreed:

"Now Therefore, The Condition of This Bond is Such, That if the principal shall pay in full any and all compensation and benefits as provided in the Workmen's Compensation Law to any and all persons entitled thereto under any policy or contract of insurance issued by the Principal, this obligation to be void; otherwise to remain in full force and virtue.

"Provided Further, That upon the Certificate of the Superintendent of Insurance that there has been default in the payment of compensation for thirty days or that the principal has become insolvent, the Attorney General of the State of Michigan may enforce this bond in the name of the People of the State of Michigan for the benefit of any and all persons entitled to the compensation assured by any policy issued by the principal or otherwise entitled to any benefits under such policy."

The penal sum of the bond was $25,000.

During 1932, the Southern Surety Company became insolvent and on March 22 of that year it was dissolved and its charter forfeited by a decree of the Supreme Court of the State of New York and title to all of its assets, including choses in action, became vested by virtue of the laws of New York in the Superintendent of Insurance of that state. The Circuit Court for the County of Wayne in the State of Michigan, appointed Walter Schweikart its receiver, the date not shown in the record.

Prior to June 16, 1931, the date of the execution of the bond in question, the Southern Surety Company had issued a large number of policies of compensation insurance to employers in Michigan, which were in conformity with the provisions of the Workmen's Compensation Law of that state, Comp.Laws Mich.1929, § 8407 et seq., and on April 11, 1932, a certificate of the Superintendent of Insurance was issued certifying that there had been a default for thirty days in payments in excess of $100,000 of awards of arbitration by the Department of Labor and Industry of the State of Michigan for which the Southern Surety Company was carrier under the above policies and that said company had become insolvent. Subsequently the certificate of the Superintendent of Insurance was submitted to the Attorney General of the State with the request that he proceed under the bond for the use and benefit of persons to whom the insurance carrier was indebted. Thereupon this action was instituted in the name of the Attorney General and claimants under the policies of the Southern Surety Company against the appellant, The Home Indemnity Company of New York, surety and Schweikart, receiver. Some of the plaintiffs were employers who had paid their employees on the default of the Southern Surety Company and others were injured employees who had not been paid.

The trial court held it was the intention of the parties to the bond, and the terms of the New York statute so required, that its obligations applied to all compensation due and unpaid at the date of execution, as well as those subsequently accruing, and that the reciprocal insurance statute of Michigan could be constitutionally construed to cover such obligations.

It further held that The Home Indemnity Company was a joint obligor on the bond and that the Southern Surety Company was not a necessary party to the action. It also held that the plaintiffs in the action were the real parties in interest and that there was no misjoinder of parties plaintiff and that all claimants to compensation under the policies of the Southern Surety Company were not necessary parties. It held that the obligation of the bond included protected employers who had paid compensation to employees covered by the policies of the Southern Surety Company.

The construction of the New York statute and the legal effect of a bond executed pursuant thereto, identical with the one here, was before the Court of Appeals of New York, a court of last resort, in the case of In re International Reinsurance Corporation, 271 N.Y. 381, 3 N.E.2d 518, 520. In that case, the International, as principal, had filed a bond dated January 5, 1933, with the General Indemnity Company, surety and in April, 1933, the principal became insolvent and was liquidated. The question for decision was whether the Indemnity Company, as surety, was liable only for losses incurred on policies issued after the execution of the bond or on those unpaid at date of execution or subsequent thereto. The court, after stating that the

controversy was primarily upon a construction of the statute and after setting out the terms of the bond, said:

"The words 'accruing subsequent to January 5th, 1933,' need a passing explanation. No words of like import are in any of the prior bonds; neither are they required or provided for in the statute. It happened that this particular bond was actually executed on January 28, 1933, as its date shows. It replaced in part a bond, dated January 5, 1933, the surety upon which went into liquidation. The words in question were obviously inserted, not as a limitation, but merely to cover the gap. We have, then, a bond complying with the statute, conditioned upon payment in full of any and all compensation and benefits 'to any and all persons entitled thereto under any policy or contract of insurance issued by the Principal,' coupled with a provision that, upon default for 30 days or in the event of insolvency, the Attorney General might enforce the bond 'for the benefit of any and all persons entitled to the compensation assured by any policy issued by the Principal.' This language leaves little room for construction. Read in the light of the purpose underlying the statute and of the statutory requirement for annual renewal in an amount fixed with reference to outstanding reserves for losses on all policies issued, it seems clear enough that it was intended as indemnity against any default in payment during its currency—exactly as it says—'under any policy or contract of insurance issued by the Principal.' The construction urged by the appellants would restrict the broad language of the statute and bond, and would lead to unnecessary and undesirable complexities in practical operation. The fund, therefore, is subject to distribution in the manner proposed by the conservator."

We interpret this decision as a ruling that under the New York statute, the obligors on the bond became liable for all the losses unpaid or accruing during the life of the instrument irrespective when the policy covering the loss became effective.

■ When the validity, meaning and effect of state statutes involve no question arising under the constitution and laws of the United States, its courts will accept the meaning and effect given such laws by the highest state court. Appellant concedes the correctness of this principle, but insists it is inapplicable here because the decision of the Court of Appeals of New York of July 8, 1936, was handed down more than five years subsequent to the execution of the bond and at the time of the decision, its obligations thereunder had become vested and fixed. The case is controlling irrespective of the date of the decision. Marine Nat. Exch. Bank v. Kalt-Zimmers Mfg. Co., 293 U.S. 357, 367, 55 S.Ct. 226, 79 L.Ed. 427.

■ The Southern Surety Company was duly licensed to do business in Michigan from 1928 until the date of its dissolution and at the time of the execution of the bond here in question, its license was in full force and effect and during this period it had built up a large and profitable business with an annual premium income of more than $250,000.00. Appellant contends that, based on these facts, the Commissioner of Insurance for the State of Michigan deprived it of its property in violation of the Fourteenth Amendment and impaired the obligation of its contracts in violation of Article I, Section 10 of the Constitution, U.S.C.A., by requiring the Southern Surety Company to give bond guaranteeing the payments on policies due at the time of the execution of the bond and those issued prior thereto.

■■ The regulation of the business of compensation insurance companies is plainly within the power possessed by the state when necessary for the protection of the public and a fortiori it has the power to protect its own domestic insurance companies doing business in other states from burdens, prohibitions and limitations placed upon them by taxes, license fees, deposits and similar measures. Philadelphia Fire Association v. New York, 119 U.S. 110, 129, 7 S.Ct. 108, 30 L.Ed. 342.

■ A privilege or license to do business granted by the state to a foreign corporation is not a contract, nor does it confer a vested right, but is issued in the exercise of the police power of the state and may be modified, revoked or continued. Such license is accepted subject to the conditions that the liabilities then prescribed by statute may be repealed or altered. It is not a contract or license within the meaning of Article I, Section 10, of the Constitution, nor property under the Fourteenth Amendment and confers no constitutional guarantees. Noble State Bank v. Haskell, 219 U.S. 104, 113, 31 S.Ct. 186, 55 L.Ed. 112, 32 L.R.A.,N.S., 1062, Ann. Cas.1912A, 487; Stockholders of Hagers-

town Bank & Trust Co. v. Sterling, 300 U.S. 175, 184, 57 S.Ct. 386, 81 L.Ed. 586; Hartford Fire Insurance Company v. Commissioner of Insurance, 70 Mich. 485, 38 N.W. 474.

There is no statute in Michigan requiring the principal to be sued and judgment obtained before an action may be brought against the surety. A party may rely on the express provisions of the bond in which the surety, for a consideration, agreed not only that the principal would perform the duties imposed on him by law, but would not breach the conditions of his obligation. The obligations imposed on the surety by the bond here in question and the liability resulting from a violation of its terms are primary and absolute. It might be sued separately for a breach of the conditions of the bond. It is well recognized that a plaintiff may sue separately a surety which has bound itself jointly and severally for the faithful performance of the obligation of the principal without joining it as defendant. 46 C.J. 1076, Sections 421, 427; People, for the use of Peter Doran, Administrator, etc. v. John Butler, 74 Mich. 643, 42 N.W. 273.

During the period appellant's suretyship was current, its principal, the Southern Surety Company, defaulted in the payment of awards theretofore made to employees under the Workmen's Compensation Laws of Michigan and commuting continuing awards to their present worth at the date of the liquidation of the Southern Surety Company, its aggregate defaults were in excess of $25,000.00.

The appellant contends that if the court should conclude it is liable as surety for defaults of its principal on policies issued prior to the date of its suretyship, its liability cannot exceed those between June 16, 1931, and June 16, 1932, on awards to employees remaining unpaid and, in no event, is it liable for payments made by employers.

The basis of its contention is that its suretyship is statutory, annually renewable and, under the terms of the statute and the language of its bond, only employees or their dependents are entitled to its protection.

Appellant's liability is fixed by the terms of its surety contract, which includes within its provisions the statute requiring its execution. The statute provides that the suretyship shall be for "the payment in full of any and all compensation and benefits as provided in this chapter to any and all persons entitled thereto under any such policy or contract of insurance."

The undertaking of the appellant and its principal was identical, their obligations contemporaneous and joint. Whatever default was suffered by its principal between June 16, 1931, and June 16, 1932, resulting in its failure to pay in full all compensation benefits provided under the Michigan Compensation Law, became the obligation of the appellant. The time of failure to pay is not material provided it resulted from the default of the principal during the statutory period of the bond.

As between the employer and employee for compensation benefits under the Michigan Workmen's Compensation Law, the employer is the principal debtor liable for the damages caused by the employee's death or injury, and he cannot free himself from this liability by the selection of an insurance carrier in which the employee has no voice.

Section 8419, Compiled Laws of Michigan, 1929 Edition, provides that compensation payments shall begin on the eighth day after injury and under Section 8425 shall continue for a period of 500 weeks in cases of total incapacity and, under Section 8426, shall continue for varying periods depending on the extent of the injury in cases of partial incapacity. Under Section 8421, payments are continued to beneficiaries for a period of 300 weeks in death cases.

Under Section 8460 if the employer has an insurance carrier, the contract of insurance must provide that it will pay to the persons who become entitled thereto all workmen's compensation insurance for which the employer is liable, including medical services and funeral expenses and the insurance carrier assumes all obligation imposed on the employer under the Michigan Compensation Act. The insurance carrier may terminate its liability by filing with the Industrial Accident Board a ten days' notice of its proposal to terminate or cancel its contract of insurance and policies will be terminated ten days after the giving of such notice. Neither the appellant nor its principal acted under this Section.

Section 8463 provides that an employer may be relieved of his liability for existing future payments of compensation by depositing their present value, assuming interest at three percentum per annum, with

a depository trust company designated by the Industrial Accident Board or by the purchase of an annuity within the limitations provided by law and in any insurance company granting annuities and licensed in the state and designated by the employee or, if deceased, by his dependents.

Under Chapter 28, Insurance Law, Section 63, Consolidated Laws of New York, the rights and liabilities of creditors of domestic insurance companies become fixed as of the date of the entry of the order directing liquidation of the corporation. Under Section 12325, the Compiled Laws of Michigan, 1929, no foreign insurance company shall continue to do business in the state after insolvency.

■ The Southern Surety Company was liquidated by the courts of New York on March 22, 1932, at which date all of its liabilities became fixed and payable. Under Section 8463 of the Compiled Laws of Michigan, supra, the Southern Surety Company became indebted to its insured under the workmen's compensation laws of that State for the present worth of all existing future payments for compensation for which it was then carrier.

■ Guaranty contracts should be construed to effectuate the intention of the parties as manifested by their terms in connection with the subject matter to which they relate and the circumstances under which given.

■ The purpose of the New York Statute and of the bonds executed pursuant thereto was to make certain that a compensation insurance carrier should at all times be in position to fulfill all of its obligations to employees under the compensation act, and for this reason, appellant became indebted for the penal sum of its bond to all persons entitled to compensation benefits under the compensation laws of Michigan, for which its principal, Southern Surety Company, was carrier at the time it became insolvent and was liquidated.

■ In this case the statute compelled the employer to pay compensation to his injured employee and a default of his insurance carrier did not excuse this payment but as between him and the insurance carrier, the burden to pay rested on the latter. Appellant was surety for the carrier, and the employer discharged its obligation. Out of this relationship, there was an implied promise that the appellant would repay the employer so much of the appellant's obligation as he had discharged. Maryland Casualty Company v. Moss & Son, 276 Mich. 219, 267 N.W. 819; American Fuel Company v. Industrial Commission of Utah, 55 Utah 483, 187 P. 633, 8 A.L.R. 1342.

■ Appellant urges that the evidence is insufficient to establish a breach of its bond. Leo J. Herrick, auditor, chief clerk and custodian of the records of the Department of Labor and Industry of Michigan, produced and filed as a part of his testimony the original records from his office as to each claimant showing that the Southern Surety Company was the insurance carrier for the employer. He also produced notices, filed with the Department, of compensable agreement settlements between the employee and the Southern Surety Company, or of the beneficiary of deceased employees as provided under the Michigan Compensation Law (Section 8444, Compiled Laws). He also produced and filed records showing payments made by the Southern Surety Company under the foregoing agreements before its insolvency, and payments made by employers to employees and awards maturing but unpaid to employees, after insolvency. He then stated what would be due each employee or his beneficiary to February 1, 1937, under the compensable agreements covered by the policies of the Southern Surety Company.

Based on this method of determining liability, the record discloses that the Southern Surety Company defaulted in the sum of $32,712.41 to employees who had received no compensation from their employers for accidents occurring since July 1, 1929, the effective date of the New York Retaliatory Statute; $5,242.55 to employees who had received no compensation from their employers on accidents sustained prior to the effective date of the Retaliatory Act. The record also discloses that employers insured against payment of compensation liability paid to injured employees or their dependents the sum of $41,639.74 on accidents which had occurred since July 1, 1929, and $15,487.40 on accidents occurring prior to the effective date of the act.

■ The evidence is clear and convincing that the defaults of the Southern Surety Company for which appellant was surety exceeded $25,000.00 for the period during which its bond was in full force and

effect. The record is not clear as to what claimants are entitled to participate in the judgment of the District Court. It did not decide this question and we do not determine it. It is claimed by the appellant that because of. this fact, the proofs do not establish a cause of action on its bond, but this contention is without merit. It may protect itself against all claimants by paying into the registry of the District Court the amount of its judgment and the Court will determine priorities and direct distribution.

The judgment of the District Court is affirmed.